Argued and submitted December 8, 1981, affirmed March 2, 1982

# BYLUND,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent,*
*and*

# VALLEY RIVER CENTER,
*Intervenor-respondent.*

(OTC 1292, SC 27730)

641 P2d 577

Carl N. Byers, Judge Pro Tempore.

Dana A. Anderson, Assistant County Counsel, Lane County Office of Legal Counsel, Eugene, argued the cause for appellant. With him on the brief was the Lane County Office of Legal Counsel.

Alfred B. Thomas waived appearance for Department of Revenue, respondent.

Vernon D. Gleaves, Eugene, argued the cause and filed a brief for the intervenor. With him on the brief was Butler, Husk, Gleaves & Swearingen, Eugene.

LINDE, J.

## LINDE, J.

Plaintiff, the Director of the Lane County Department of Assessment and Taxation, appeals from a decision of the Oregon Tax Court concerning the assessed valuation of the Valley River Center, a regional shopping center in that county. The parties stipulated that the value of the shopping center should be determined by the method of capitalizing its rental income, and they stipulated to a total value except for a dispute about the proper treatment of improvements made by tenants in their respective premises. Plaintiff contends that these improvements have taxable value to the tenants which is not reflected in the rent collected by the taxpayer Valley River Center as lessor, and which can best be approximated by an approach based on the costs of the improvements. The tax court held that, although this might under some circumstances be appropriate, plaintiff had not proved that the tenant improvements in the Valley River Center were not in fact fully reflected in the center's rental income or that their value could be estimated by plaintiff's evidence of their cost. 9 OTR 4 (1981). Upon review "anew upon the record," ORS 305.445, ORS 19.125(3), including the stipulations, we affirm the tax court's decision.

On January 1, 1977, the assessment date in this case, the shopping center was occupied by four major department stores and approximately 100 other stores, shops, and offices. Under the terms of varying types of leases, the tenants were responsible for providing improvements in their leased premises, including such items as interior partitions, air conditioning, store fronts and interior store design. At the end of the lease period the lessor had the choice of retaining these improvements or having the tenant remove them. According to the stipulations, the income approach when applied to the taxpayer's income produced a capitalized value of $13,353,790 for improvements on the land.[1] The parties also stipulated that the single issue to be decided is "whether it is proper to add

---

[1] The capitalization approach resulted in a total valuation of $15,709,940. The parties have stipulated that $2,356,150 of that amount is attributable to the land. The dispute in this case is solely over the assessed improvement value of $13,353,790.

to the valuation for shopping center land and improvements determined by an income approach the sum of $1,119,036 for certain tenant improvements."

■     It is not disputed that the value of the tenants' improvements are taxable to the owners of the shopping center. ORS 308.210, 308.215(4).[2] *Shields v. Department of Revenue,* 266 Or 461, 470-72, 513 P2d 784 (1973). The method of assessment must take into consideration "the improvements of the land ... and also the use, earning power and usefulness of such improvements." ORS 308.235. The question posed by the parties therefore is whether the method of assessment that capitalized the improvement value of the center's rental income at $13,353,790 included the value of the tenant improvements, and if not, whether these improvements have been shown to be worth an additional $1,119,036.[3] As will be seen, the terms of the stipulation bears on the disposition of this appeal.

■ ■     In tax cases this court and the Oregon Tax Court are confined by evidence in the record. This applies not only to data concerning a taxpayer's income or property but also to methods of accounting or valuation, unless these are prescribed by law or regulation. *Bend Millwork Co. v. Department of Revenue,* 285 Or 577, 592 P2d 986 (1979). As stated in that case, the court cannot properly go outside the

---

[2] ORS 308.210:

"(1) The assessor shall proceed each year to assess the value of all taxable property within the county, except property that by law is to be otherwise assessed . . . ."

ORS 308.215:

"The assessor shall prepare the assessment roll in the following form:

"(1) Real property shall be listed in sequence by account number or by code area and account numbers. For each parcel of real property, the assessor shall set down in the assessment roll according to the best information he can obtain:

* * * *

"(f) The assessed value of all buildings, structures and improvements thereon."

[3] The parties stipulated that the single issue in this proceeding is whether it is proper to add $1,119,036 for certain tenants' improvements. Plaintiff "revised" its valuation of the tenant improvements at trial, alleging that they should be valued at $1,039,730.

record to consult publications describing appraisal methodology, beyond resorting to reference books for the "true signification" of words and phrases, ORS 41.410(1) (now replaced by Or Rule of Evidence 201(b), Or Laws 1981, ch 892, § 98.)[4] 285 Or at 583. The parties must depend on testimony of witnesses and exhibits properly admitted to show the cogency as well as the underlying data of their calculations.

At the trial of this case, the taxpayer's objective was to show that the stipulated capitalization of its rental income included whatever value could be ascribed to the tenants' improvements. To do this, it sought through testimony of its own witnesses and crossexamination of plaintiff's witnesses to develop the thesis that the income method of appraisal rests on the concept of "economic rent." The witnesses defined this term to mean no more than the rent dictated by the market for the type of property involved. Given the different dates and durations of leases and changes in inflation and other market conditions, of course, the rent specified in a single lease at any given time may be more or less than the exact "economic rent" for the premises occupied by the tenant. Nevertheless, it may be inferred from the evidence that the overall rental income of a "mature" shopping center which had reached its normal level and types of occupancy would reflect the rental market for such property and therefore correspond to the "economic rent."

The testimony, however, does not state with convincing clarity whether what is "economic rent" to a lessor of the bare shell of a retail store incorporates the value of whatever improvements are made by the tenant. The tenants were expected to make substantial expenditures before the rented quarters were ready to attract customers.[5] As best we can determine from the testimony offered by the

---

[4] The tax court in this case quoted statements from publications of the American Institute of Real Estate Appraisers that we do not find in the record.

[5] Plaintiff's witness Knox assented to the general principle that an appraisal of a separate interest of a tenant in leased premises depends on first determining whether the economic rent exceeds the contract rent. Plaintiff's witness Price also agreed that when the value of rental property is appraised by an income approach, it is necessary to determine whether the rents used in the appraisal are "economic rents" reflecting the rental market for the type of property involved.

opposing sides, the taxpayer's thesis is that whatever rent a tenant in fact will pay for the unfinished quarters and the privilege to finish them at its own cost constitutes the "economic rent" for the tenant's total investment in its premises and therefore, if capitalized, includes the full value of the premises. Plaintiff, on the other hand, takes the position that the rent for unfinished premises represents only the value of the unfinished premises, and that their economic, income-producing value depends on and should include the additional sums reasonably expended in tenant improvements. But the lines were not clearly drawn in the testimony. Plaintiff's witnesses conceded some of the taxpayer's assertions about the role of "economic rent" in property valuation.[6] Under many leases the rent included a percentage of the tenant's gross receipts. Insofar as the value of the tenant improvements lay in producing tenant income, effective improvements would increase the rent payable under most of the leases and at least to that extent be reflected in the valuation of the center. On the other hand, it could happen that a tenant's improvements (along with other factors) might result in a volume of business and income that would make the economic rental value of the premises to the tenant greater than the contract rent. In such a case, the rent collected by the center would not fully reflect the value of the tenant improvements.

In order to put a value on the tenant improvements for property tax purposes, in the absence of a market for selling such improvements or a method for segregating and capitalizing the income attributable to them, plaintiff proposed to add the costs of the tenant improvements to the capitalized value of the rents paid to Valley River Center. On the evidence, the choice of a cost approach might well be defensible where it is established that the income earning value of the improvements was not fully reflected in the rent paid to Valley River Center, in other words, where the economic rent of the improved quarters exceeded the contract rental. But the witnesses' testimony does not support

---

[6] Valley River Center used either a "basic shopping center lease," under which the landlord installed floors, ceilings, plumbing fixtures, heating, lights, and electrical work, and the tenant was responsible for interior partitions, air conditioning, and store design, or a "shell and allowance" lease, in which the tenant also took responsibility for more of the foregoing functional installations and the center provided an allowance to cover part of the costs.

a conclusion that this assumption can be made across the board for all or even most of the stores and shops in the center. The level of expenditures on store design and interior finish varies substantially and often is dictated by reasons beyond the economic efficiency of the particular store. The expenditures on improvements in any single store is as likely to be more as to be less than their actual contribution to the rental value of the premises.

■ On the evidence before us, therefore, an addition for tenant improvements beyond the capitalized rents would have to depend on a store-by-store analysis of the contribution, if any, made by the tenant improvements to rental value beyond the contract rent. Such an analysis may be impractical for property tax purposes, but without it, the record does not support the simple addition of the costs of the improvements to the capitalized rents. As stated above, the parties have stipulated that, if plaintiff's theory is accepted, the amount to be added to the center's value for tax purposes is $1,119,036. If not, the stipulated improvement value is $13,353,790. The stipulation does not invite the tax court or this court to estimate whether there might be some partial additional value to the tenant improvements under some of the leases, nor to remand the case for further evidence or computations on that question. The tax court found that the evidence did not support the addition of the assessment for tenant improvements sought by plaintiff. We agree with that finding.

The decision of the Oregon Tax Court is affirmed.