Submitted on the record June 19, 1998, judgment of Tax Court reversed and case remanded to Tax Court for further proceedings May 27, 1999

Bhagwati P. PODDAR,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent,*

*and*

CLATSOP COUNTY,
*Intervenor-Respondent.*

(OTC 3773; SC S44343)

983 P2d 527

Bhagwati P. Poddar, petitioner *pro se*, filed the brief.

Rochelle Nedeau, Assistant Attorney General, Salem, filed the brief for respondent. With her on the brief was Hardy Myers, Attorney General.

Blair J. Henningsgaard, Astoria, waived appearance for intervenor-respondent Clatsop County.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.*

DURHAM, J.

---

* Kulongoski, J., did not participate in the consideration or decision of this case.

## DURHAM, J.

■ Taxpayer appeals a judgment entered after the Oregon Tax Court dismissed his amended complaint for failure to state a claim. Taxpayer contends that, although his amended complaint challenged the assessed value of on his property, his amended complaint is sufficient. Taxpayer further challenges discovery orders issued by the Tax Court. We review for errors of law. ORS 305.445.[1] We conclude that taxpayer's amended complaint states a claim. We also conclude that the Tax Court committed no error regarding the discovery orders. Accordingly, we reverse the judgment and remand the case to the Tax Court for further proceedings.

Taxpayer seeks relief from alleged assessment errors made by the Clatsop County Assessor in tax year 1993-94. Taxpayer sought review of the assessments from the county board of equalization[2] and the Department of Revenue (department), both of which affirmed the assessor's action.

In January 1995, taxpayer filed a complaint in the Tax Court against the department.[3] Taxpayer alleged that the assessor erred in assigning valuations to several structures on one piece of property: a partially completed residence, an older residence, a machine shed, a greenhouse, and a barn/garage. According to taxpayer, the assessor overvalued his property by $103,872. In January 1996, the department requested inspection of taxpayer's property. At that time, taxpayer had completed his residence. Taxpayer

---

[1] ORS 305.445 was amended effective September 1, 1997. Or Laws 1995, ch 650, §§ 25, 116. It now provides, in part:

"The scope of the review of either a decision or order of the tax court judge shall be limited to errors or questions of law or lack of substantial evidence in the record to support the tax court's decision or order."

Before September 1, 1997, this court reviewed the facts in tax cases *de novo*. ORS 305.445 (1995). Because this case presents only issues of law, our review is the same under either version of the statute.

[2] In 1997, the legislature changed the name of the reviewing body, set out in ORS 309.100, from "board of equalization" to "board of property tax appeals" and enacted other statutory amendments. Or Laws 1997, ch 541, §§ 223a to 241. The 1997 amendments to ORS 309.100 do not affect our analysis in this case.

[3] Clatsop County intervened in the Tax Court but waived appearance in this court.

objected on relevancy grounds to an inspection of his completed residence, arguing that the sole issue was the percentage of completion at the time of the 1993-94 assessment. He maintained that the department could not determine the value of the partially completed residence by inspecting the completed residence. He also asserted a constitutional right to privacy. The department moved to compel inspection, and the Tax Court allowed the motion.

On April 8, 1996, taxpayer filed a notice of appeal with this court, seeking to challenge the constitutionality of the order compelling inspection. Two days later, representatives from the assessor's office attempted to inspect the property, but taxpayer's wife denied them access. In June 1996, this court dismissed taxpayer's appeal for lack of jurisdiction.

On January 6, 1997, the Tax Court issued a second order allowing inspection. According to taxpayer, in an effort to protect the privacy of his residence from an inspection under that discovery order, taxpayer, on January 16, 1997, moved for leave to file an amended complaint that taxpayer asserted would remove from controversy the percentage of completion and valuation of the new residence as of July 1, 1993, and accept the assessor's valuation. On January 22, 1997, representatives of the assessor's office again tried to inspect the property. Taxpayer provided access to the interior of the old residence and the machine shed, but taxpayer's wife denied access to the interior of the new residence, the greenhouse, and the barn/garage.

On February 6, 1997, the Tax Court, over the department's objection, allowed taxpayer's motion to amend his complaint. Taxpayer's amended complaint alleged that the assessor erred in valuing only the old residence, the machine shed, and the greenhouse. The total overvaluation, according to the amended complaint, was $30,370. The department moved to dismiss or, alternatively, to strike the amended complaint under Tax Court Rule (TCR) 21 A(8) and TCR 21 E(1).[4] The department contended that taxpayer's amended

---

[4] TCR 21 A(8) provides:

"[T]he following defenses may at the option of the pleader be made by motion to dismiss: * * * (8) failure to state ultimate facts sufficient to constitute a claim[.]"

complaint failed to state a claim, because a complaint that challenges the valuation of only some improvements to real property fails to allege all the ultimate facts needed for an appeal of the "roll value" of the improvements, *i.e.*, the assessed value of the improvements that ORS 308.215(1)(f) requires the assessor to place on the assessment roll.

The Tax Court granted the motion to dismiss. The order of dismissal stated that taxpayer acknowledged that his amended complaint was intended to avoid inspection of his residence. The Tax Court also concluded that the department's right to defend against taxpayer's action outweighed taxpayer's constitutional right of privacy. The court gave taxpayer 30 days to amend his complaint. Taxpayer did not file a second amended complaint, but instead informed the court that he intended to appeal the dismissal to this court. On June 6, 1997, the Tax Court issued a judgment of dismissal, and this appeal followed.

Taxpayer raises three assignments of error. We first address his third assignment of error, in which taxpayer challenges the dismissal of his amended complaint. The department argued, and the Tax Court agreed, that the complaint failed to state a claim based on ORS 308.215(1), which provides, in part:

"The assessor shall prepare the assessment roll in the following form:

"* * * * *

"(1)  * * * For each parcel of real property, the assessor shall set down in the assessment roll according to the best information the assessor can obtain:

"* * * * *

---

TCR 21 E(1) provides:

"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within ten (10) days after the service of the pleading upon such party or upon the court's own initiative at any time, the court may order stricken: (1) any sham, frivolous, or irrelevant pleading or defense or any pleading containing more than one claim or defense not separately stated[.]"

"(e)   The assessed value, maximum assessed value and real market value of the land, excluding all buildings, structures, improvements and timber thereon.

"(f)   The assessed value, maximum assessed value and real market value of *all buildings, structures and improvements* thereon."

(Emphasis added.) The Tax Court interpreted the emphasized wording as follows:

"Where there are multiple buildings, structures, and improvements for a single account, the statute requires the assessor to enter a single improvement value on the roll. The assessor may, as he has done here for administrative purposes, assign a value to each of the improvements. However, the only assessed value for tax purposes is the value placed on the assessment roll.

"Because the statutes require land and improvements to be separately addressed, a taxpayer may elect to appeal either or both. *Nepom v. Dept. of Revenue*, 272 Or 249, 536 P2d 496 (1975). However, the statutes do not contemplate or allow a taxpayer to appeal only part of an assessed value. To appeal the assessed value of any improvements within a single account, the taxpayer must allege that the assessed value is in error and a lesser value is correct. Plaintiff's Amended Complaint fails to do this and therefore fails to state a claim."

Taxpayer argues that ORS 308.215 is silent about the issues that a taxpayer may appeal and that the Tax Court misinterpreted that statute. He also points to TCR 12, which provides:

"A.   All pleadings shall be liberally construed with a view of substantial justice between the parties.

"B.   The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

He notes that his amended complaint alleged the total assessed value, the assessed value with respect to each improvement, the contested improvements, and their correct values. Taxpayer argues that, liberally construed, those allegations are sufficient to state a claim.

Taxpayer's claim is based on ORS 309.100 (1993), which provided, in part:

"(1)   The owner or an owner of any taxable property * * * may petition to the board of equalization for reduction of the real market or assessed value placed upon the property by the county assessor. Petitions filed under this subsection shall be for the reduction of the real market or assessed value of property as of July 1 * * *.

"* * * * *

"(3)   Each petition for the reduction of the real market or assessed value of a particular property shall:

"* * * * *

"(b)   State the facts and the grounds upon which the petition is made."

According to the department, ORS 309.100 allows a taxpayer to petition for reduction in the real market or assessed values "placed on the roll." The department observes that, under ORS 308.215(1)(f), the valuation that the assessor must "place on the roll" for improvements is that of "all buildings, structures and improvements." The department argues that that phrase means a single number that represents the value of the total of all improvements. The department contends that, because taxpayers may challenge the assessed values "placed on the roll" and because what must be "placed on the roll" is a total valuation of improvements, a complaint that challenges the valuation of improvements fails to state a claim, unless it challenges the total valuation of all improvements together.

The department's argument is not well taken. Because the task at hand requires us to construe a statute, we are guided by the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (articulating methodology for statutory construction).

In this instance, the context of the statute—specifically its earlier formulation—proves particularly instructive. ORS 309.100(1) (1989) provided:

"The owner or an owner of any taxable property or the person in whose name the property is assessed, may petition to the board for reduction and equalization of the true cash value placed upon the property by the county assessor on the roll submitted to the board in accordance with ORS 309.060."

That version of the statute afforded at least some support for the department's argument that the objective of any taxpayer's petition was the reduction of the true cash value placed on the property by the county assessor *on the roll* submitted to the board under ORS 309.060.

■  In 1991, the legislature amended ORS 309.100(1). Or Laws 1991, ch 459, § 196. The amendment removed from the statute the phrase "on the roll submitted to the board in accordance with ORS 309.060." Under ORS 309.100(1) (1993), which was in effect at the time of the assessment at issue here, a taxpayer could petition for a reduction in the "value placed upon the property by the county assessor." The legislature's removal of the reference to property "on the roll" in ORS 309.100(1) undermines the department's argument. We conclude that the text and context of ORS 309.100(1) are clear: a party bringing a challenge under ORS 309.100(1) need not challenge the total valuation placed on all improvements to state a claim.

Moreover, we are not persuaded that taxpayer's complaint fails to state a claim challenging the total valuation placed on all improvements. Taxpayer's complaint sets out the total assessed value of all improvements, the assessed value of each improvement, and, with regard to the structures for which he challenges the valuation, a proposed value. The complaint, liberally construed, TCR 12 A, alleges that taxpayer challenges the total assessed value of the improvements in an amount equal to the difference between the assessed value of three of the structures and the lower values that he contends are correct. Put another way, taxpayer *does* allege that he is dissatisfied with the total valuation assigned by the assessor to the improvements on his property, but instead of alleging that the assessor overvalued the property by $103,872—as he alleged in his original complaint challenging the valuation of each improvement—he

alleges in his amended complaint that the assessor over-valued the property by $30,370. Under either reading of the complaint, taxpayer seeks a reduction in the total assessed valuation assigned to his improvements.

*Nepom* is not to the contrary. In *Nepom*, the tax-payer contested the valuation assigned to the improvements on her land. However, after reducing the valuation assigned to the improvements, the Tax Court added the amount of that reduction to the valuation assigned to her land. Tax-payer appealed, arguing that the Tax Court had no authority to increase the valuation assigned to the land, because she had challenged only the valuation assigned to the improvements. This court reversed, stating:

> "In the instant case we see no valid reason why the par-ties by stipulation or by attacking only one of the valuations cannot raise the one specific issue on an appeal. Our stat-utes specifically require the assessor to separate the value of the land and improvements on the assessment roll."

*Nepom*, 272 Or at 254. The court in *Nepom* found support for its holding in the statutory bifurcation of valuations for land and for improvements now found at ORS 308.215(1)(e) and (f). The *Nepom* court did not suggest, let alone hold, that a party bringing a challenge under ORS 309.100 must chal-lenge the total land valuation or total improvement valuation because of the structure of ORS 308.215(1). Rather, in *Nepom*, the court relied on the unexceptional proposition that parties may stipulate to some factual matters and dis-pute others. The same proposition applies here.

■          In *Nepom*, this court stated:

> "We do not intend to indicate that evidence of the total valuation is inadmissible for it may be relevant to the value of the components."

272 Or at 256 n 4. As in *Nepom*, the issue under taxpayer's third assignment of error is not the admissibility of evidence. Rather, it is the parameter of the dispute before the court. Taxpayer may have been motivated to amend his complaint to avoid discovery with respect to certain structures. How-ever, in determining the sufficiency of a pleading, we exam-ine only the pleading itself, not the pleader's motivation. As

in *Nepom*, we see no reason why a taxpayer cannot state a claim by disputing only part of the assessed valuation of the improvements to his property. *See Bylund v. Dept. of Rev.*, 292 Or 582, 584, 641 P2d 577 (1982) (parties stipulated to all valuation issues except one). Of course, the taxing authority remains entitled to inquire into the valuation of the balance of the property when a taxpayer asserts such a claim. We conclude that taxpayer's complaint was sufficient to state a claim under ORS 309.100 and that the Tax Court erred in dismissing taxpayer's complaint.

■   In his first and second assignments of error, taxpayer assigns error to the orders compelling the inspection of his residence, arguing that the inspection would not lead to the discovery of admissible evidence. Taxpayer states two bases for that argument. First, under the amended complaint, the value of his residence is no longer at issue and, accordingly, evidence of its value would be irrelevant and hence inadmissible. Second, even if the value of the residence is at issue, the residence was only partially complete during the 1993-94 tax year, and inspection of the now-completed residence would not lead to the discovery of any relevant evidence about the value of the partially completed residence in 1993-94. Taxpayer also contends that there are less intrusive ways of discovering the percentage of completion of his residence in tax year 1993-94, such as examining building inspection records and a videotape.

TCR 36 B(1) states the pertinent standard for discovery in this proceeding:

> "For all forms of discovery, parties may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

We agree with the department that an inspection of taxpayer's residence appears reasonably calculated to lead to the discovery of admissible evidence with regard to the other structures, because, as we suggested in *Nepom,* "evidence of the total valuation * * * may be relevant to the value of the components." 272 Or at 256 n 4. Moreover, we reject taxpayer's argument that an inspection of the completed residence could not lead to admissible evidence regarding the value of the incomplete residence. Although perhaps better evidence of value and the percentage of completion may come from other sources, such as those noted by taxpayer, an inspection of the completed residence could provide information about materials and construction techniques that would be admissible on the issue of the correctness of the assessor's valuation of the incomplete residence.

Taxpayer further argues that inspection of his residence would interfere with his right to privacy under Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution.[5]

■■ We address plaintiff's state constitutional argument first. *See State v. Moylett,* 313 Or 540, 545, 836 P2d 1329 (1992) (setting out methodology); *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983) (same). Article I, section 9, does not erect an absolute barrier to the entry of government agents into a citizen's home. Rather, it permits searches of a home that are not "unreasonable" and, subject to certain exceptions that are not applicable here, requires that a judicial officer, rather than an executive branch officer, determine in advance that adequate factual and legal grounds justify entry into a home. *See State v. Brown,* 301 Or 268, 273,

---

[5] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

721 P2d 1357 (1986) (Article I, section 9, requires impartial approval of judicial officer before most searches); *State v. Quinn*, 290 Or 383, 390, 623 P2d 630 (1981) (all persons are to be free of unreasonable searches; decision to search is to be made by judicial, not executive, branch). We conclude that the Tax Court's correct determination that TCR 36 B(1) justifies the entry requested here also satisfies the requirements for entry into a home under Article I, section 9.

■■ We also reject taxpayer's privacy claim under the Fourth Amendment. In resolving that claim, the Tax Court, quoting *Lora v. Board of Ed. of City of New York*, 74 FRD 565, 576 (ED New York 1977), observed that "[t]he right of privacy is not absolute. It 'must be balanced against legitimate and weighty competing private and state interests.'" The Tax Court balanced taxpayer's interest in privacy against the department's interest in defending against taxpayer's complaint and concluded that, because the property's value is directly at issue, the department's ability to defend against the complaint seriously would be impeded without access to the property. We conclude that the Tax Court correctly characterized the controlling authorities and properly balanced the interests at stake under the Fourth Amendment. The Tax Court did not err in ordering taxpayer to comply with the department's request for an inspection of his residence.

The judgment of the Tax Court is reversed, and the case is remanded to that court for further proceedings.