OPINION
 I. INTRODUCTION
This matter comes before the court for decision after trial. Plaintiffs Cornel and Camelia Bleoaja (taxpayers) appeal following a dismissal in the Magistrate Division for failure to follow two orders requiring an interior inspection of their home. Defendant Department of Revenue (the department) argues that the dismissal by the court was appropriate.
 II. FACTS
A. Uncontested Facts
The majority of the facts are uncontested. Taxpayers purchased their land in December 2004 and began construction on a new home in the middle of 2005. (Trial at 9:42:30, Apr 19, 2010.) On April 11, 2006, an appraiser employed by the Clackamas County Assessor (the county) completed an inspection. (Ptfs' Ex 3 at 1; Def's Ex B at 27-28.) At the time of the inspection, the home was thirty percent complete. (Def's Ex B at 28.) After that inspection, the 2006-07 property tax statement listed the real market value (RMV) of the property at $462,009, *Page 2 
and the assessed value (AV) was listed at $274,105. (Def's Ex B at 17.) The county based the 2006-07 assessment on the value of the home as of January 1, 2006. See ORS 308.210[1] (Def's Ex B at 27-28). Taxpayers appealed the RMV of the property for the 2006-07 tax year to the Magistrate Division. (Def's Ex B at 22.) Subsequently, taxpayers signed a stipulated agreement with the county that set RMV of the property at $324,682 and maximum assessed value (MAV) of the property at $191,709 for the 2006-07 tax year.[2] (Def's Ex B at 21-22.) Taxpayer Cornel Bleoaja indicated in testimony that the county also agreed during the 2006-07 appeal proceeding to make a final valuation of the property following completion of the construction. (Trial at 9:43:50, 9:44:45, Apr 19, 2010.)
On January 19, 2007, when construction was nearly complete, taxpayers had a private party complete an appraisal for a bank transaction of taxpayers (the private appraisal). (Def's Ex B at 60.) The private appraisal valued the property at $910,000. (Def's Ex B at 60.) The county visited the property on February 22, 2007, and taxpayers later found an inspection notice inside their home. (Ptfs' Ex 2 at 1; Trial at 9:47:45, Apr 19, 2010.) Shortly thereafter, construction was completed, and the Clackamas County Building Codes Division issued a certificate of satisfactory completion of the home on April 30, 2007. (Def's Ex B at 24.)
When the 2007-08 property tax statement arrived, the statement listed the RMV of the property at $841,738, and the AV of the property at $444,708. (Def's Ex B at 18.) The county based the 2007-08 assessment on the value of the home as of January 1, 2007.See ORS 308.210. Taxpayers chose not to appeal the value for 2007-08 to the Board of Property Tax Appeals (BOPTA). (Trial at 9:47:16, Apr 19, 2010.) *Page 3 
The 2008-09 property tax statement listed the RMV of the property at $950,878, and the AV of the property at $497,604. (Def's Ex B at 19.) The county based the 2008-09 assessment on the value of the home as of January 1, 2008. See ORS 308.210. The 2008-09 tax year was the first time the county assessed the completed home. (Def's Ex B at 12.) On December 30, 2008, taxpayers appealed that value to BOPTA. (Def's Ex B at 8.) After BOPTA made a minor reduction in value based on the private appraisal, taxpayers appealed to the Magistrate Division, filing their Complaint on April 28, 2009. (Def's Ex B at 1, 75, 78.)
On October 6, 2009, the county called taxpayers to request an interior inspection of their home.[3] (Def's Ex F at 1.) When taxpayers refused the request, the county contacted the Magistrate Division on October 8, 2009, to request an order for an interior inspection of the property, stating that the county needed to inspect the property in order to complete an appraisal for the defense of the prior valuation of the property. (Ptfs' Ex 4 at 3; Def's Ex F at 1.) As an alternative to the interior inspection, the county requested that the case be dismissed. (Id.) Taxpayers objected to the inspection request on October 12, 2009, arguing that an interior inspection was irrelevant to the defense by the county. (Ptfs' Ex 4 at 1; Def's Ex G at 1.) Over the objection of taxpayers, the court issued an Order on October 15, 2009, requiring taxpayers to submit to an interior inspection of the property by the county. (Def's Ex H at 2.) The order also notified taxpayers that the court might dismiss their appeal if taxpayers did not comply with the order within ten days. (Def's Ex H at 2.) Taxpayers responded by filing a motion to reconsider on October 19, 2009. (Ptfs' Ex 5 at 1; Def's Ex I at 1.) The court issued an Order Denying Reconsideration on October 20, 2009. (Def's Ex J at 1.) *Page 4 
On October 26, 2009, the county notified the court via letter that taxpayers were still refusing an interior inspection despite the two orders directing them to allow the inspection. (Def's Ex K at 1.) In the same letter, the county renewed its request for dismissal. (Id.) The court issued a Decision of Dismissal on October 28, 2009. Bleoaja v. Clackamas Cnty., TC-MD No 090836B, WL 3466018 (Oct 28, 2009) (Def's Ex M at 1).
Following the dismissal of their case in the Magistrate Division, taxpayers timely appealed to the Regular Division, asserting error in the dismissal. (Compl at 1.) Trial was held at the Tax Court on April 19, 2010.
At trial, taxpayer did not call any witnesses to testify. The department called both taxpayer Cornel Bleoaja and Clackamas County Senior Appraiser Matt Healy (the county appraiser).[4]
B. Contested Facts
Taxpayers and the department disagree on whether the county inspected the interior of the property during the April 11, 2006, and February 22, 2007, inspections. Taxpayers argue that the county completed interior inspections on April 11, 2006, and February 22, 2007. (Compl at 1; Ptfs' Ex 5 at 2.) As evidence that the two interior inspections were completed, taxpayers provided copies of the county inspection notices found on those dates. (Ptfs' Ex 2 at 1; Ptfs' Ex 3 at 1.) In his testimony, taxpayer further stated that he had found the February 22, 2007, inspection notice inside his home. (Trial at 9:48:28, Apr 19, 2010.) *Page 5 
The county appraiser testified that nobody employed by the county had seen the completed interior of the property, and that it was against county policy for appraisers to enter private homes when their owners were not present. (Trial at 10:20:45, 10:22:00, Apr 19, 2010.) The county appraiser did note that appraisers often left inspection notices outside or gave the notices to contractors with interior access, who would then deliver the inspection notices to the homeowners for review. (Trial at 10:21:37, Apr 19, 2010.)
During his testimony, the county appraiser admitted that the county had completed an interior inspection on April 11, 2006. (Trial at 10:32:29, 11:00:10, Apr 19, 2010.) However, the county appraiser testified that the county had never inspected the finished interior of the home. (Trial at 10:20:45, Apr 19, 2010.) The internal records of the county reflect that the home was only thirty percent complete at the time of the April 11, 2006, inspection. (Def's Ex B at 28.)
Regarding the February 22, 2007, inspection, the county appraiser testified that internal records reflected that the county had only completed an exterior inspection on that date, despite the fact that taxpayer found the inspection notice inside the home. (Trial at 10:21:25, Apr 19, 2010; see also Def's Ex B at 28.) The county appraiser further testified that it was a possibility that the appraiser who visited the property of taxpayers on February 22, 2007, had given the inspection notice to a contractor with access to the home. (Trial at 10:21:56, Apr 19, 2010.) Taxpayer testified that the home was usually open during construction to allow the contractors access to complete their work, but did not refute the testimony of the county appraiser. (Trial at 9:50:07, Apr 19, 2010.) Because taxpayers did not prove by a preponderance of the evidence that an interior inspection took place on February 22, 2007, the court finds as a fact that the county did not complete an interior inspection on that date.[5] *Page 6 
 III. ISSUE
Should the Complaint of taxpayers be dismissed for failure to comply with the orders of the court?
 IV. ANALYSIS
A. Standard of Review and the Decision of Dismissal
1. Standard of Review
Tax Court Regular Division proceedings are independent proceedings that are tried de novo. ORS 305.425(1). The de novo
standard of review exists even in cases dismissed by the Magistrate Division for procedural reasons. Spears v. Dept. ofRev., ___ OTR ___, WL 1565460 (April 20, 2010) (slip op at 2) (citing Norpac Foods, Inc. v. Dept. of Rev.,15 OTR 331, 333 (2001)). However, because cases must first be litigated in the Magistrate Division, the Regular Division must initially restrict its de novo review to the issue of dismissal in the Magistrate Division. Spears, ___ OTR at ___ (slip op at 1-2); see ORS 305.501(1). If the Regular Division failed to take a dismissal in the Magistrate Division into account, it "would, in essence, render meaningless the requirement that * * * matters first be heard in the Magistrate Division."Freitag v. Dept. of Rev., 19 OTR 144, 148 (2006). Thus, thede novo inquiry of the Regular Division trial turns next to the alleged procedural failings by taxpayers resulting in the dismissal by the court. For the trial in the Regular Division, both taxpayers and the department created a new record regarding noncompliance with the prior orders of the court. *Page 7 
2. The Decision of Dismissal
To determine the validity of the orders issued by the court, the court examines the underlying rules covering such orders.See ORS 305.425.[6]
Tax Court Rule-Magistrate Division (TCR-MD) 11 governs discovery in Magistrate Division proceedings. TCR-MD 11 provides: "Discovery is allowed in the Magistrate Division only when a party requests it and a magistrate orders it. When discovery has been ordered, TCR 36 through TCR 46 shall apply."
Tax Court Rule (TCR) 36 sets out the general discovery rules of the court. TCR 36 A provides: "Parties may obtain discovery by * * * permission to enter upon land or other property, for inspection and other purposes * * *." TCR 36 B(1) continues:
 "For all forms of discovery, parties may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party * * *. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
(Emphasis added). When the court issues an order compelling discovery, that order may be enforced pursuant to TCR 54. TCR 54 B(1) provides: "For failure of the plaintiff to * * * comply with * * * any order of court, a defendant may move for a judgment of dismissal of an action or of any claim against such defendant, or the court may, on its own motion, dismiss the case." TCR-MD 20 also specifies dismissal as a sanction for the Magistrate Division. TCR-MD 20 *Page 8 
provides: "The court may enforce any * * * order * * * directing a party to perform a specific act by imposing sanctions on the party refusing or neglecting to comply. Sanctions may include, but are not limited to, dismissal of the case, and may include sanctions for contempt as authorized by statute."
Here, the county requested discovery in the form of an interior inspection of the property in order to defend against the complaint filed by taxpayers in the Magistrate Division. Because the court believed that an interior inspection was "reasonably calculated to lead to the discovery of admissible evidence," the court issued two orders requiring taxpayers to permit an interior inspection of the property. See TCR 36 B(1). The first order also warned taxpayers that the case could be dismissed if taxpayers continued to refuse the interior inspection. Taxpayers refused to comply with either of the orders, and the Magistrate Division dismissed the case in accordance with its court rules.
Poddar v. Department of Revenue,328 Or 552, 983 P2d 527 (1999), involved a similar situation where a taxpayer refused to follow two court orders compelling an interior inspection of his property. Id. at 555. In Poddar, the taxpayer believed that an interior inspection of his property was both unjustified and irrelevant.[7] Id. at 561. Over the claims of the taxpayer, the Oregon Supreme Court agreed with the department. Id. at 562. The court stated, "[A]n inspection of the completed residence could provide information about materials and construction techniques that would be admissible on the issue of correctness of the assessor's valuation of the incomplete residence." Id. *Page 9 
Here, taxpayers appealed the value of their completed residence and refused to allow an interior inspection of that completed residence. Taxpayers argue that an interior inspection of the completed property was both unjustified and irrelevant. Although the court has found as a fact that the county did not previously inspect the interior of the property, a new inspection would be warranted even if a prior interior inspection had occurred. Because the county based the 2007-08 assessment on the value of the home as of January 1, 2007, the exterior inspection completed on February 22, 2007, estimated the percentage of completion of the home as of January 1, 2007. No inspection took into account the interior and exterior construction progress that took place between February 22, 2007, and April 30, 2007.[8] An interior inspection of the completed property that goes to the heart of the appeal of taxpayers is "reasonably calculated to lead to the discovery of admissible evidence." See TCR 36 B(1). The court rejects the argument of taxpayers that an interior inspection of the completed property was both unjustified and irrelevant.
B. Fourth Amendment Rights of Taxpayers
Taxpayers also argue that an interior inspection by the county is a violation of their Fourth Amendment rights to privacy under the United States Constitution.[9] (Trial, Apr 19, 2010, 11:20:02.) The department, in response, relies on the holding inPoddar. *Page 10 
In Poddar, a second argument of the taxpayer was that an inspection by the county would infringe upon hisFourth Amendment right to privacy. Poddar, 328 Or at 562. In its constitutional review, the Oregon Supreme Court upheld the test used by this court that balanced the taxpayer's right to privacy against "legitimate and weighty competing private and state interests."Id. at 563 (citation omitted; internal quotation marks omitted). Ultimately, the court determined that an inspection was necessary because the department would not be able to adequately defend against the complaint of the taxpayer if not permitted to complete an interior inspection of the property. Id.
Taxpayers argue that the result in Poddar is inapplicable to their case because Poddar involved several different buildings on one piece of land. (Ptfs' Ex 4 at 1.) The argument of taxpayers is not well taken. Although it is true that Poddar involved several different buildings on one piece of land, that distinction is irrelevant here. Rather, the court views Poddar as factually similar in terms of procedure, because both dismissals were due to refusals to follow court orders compelling interior inspections of property subject to litigation.
Based on the similarities between the case of taxpayers andPoddar, the court views Poddar as controlling precedent. Because the department would be unable to adequately defend against Complaint of taxpayers without an interior inspection, rights to privacy of taxpayers are outweighed by the department's legitimate state interest in defending its case. The court rejects theFourth Amendment argument of taxpayers.
 V. CONCLUSION
It is the opinion of the court that Complaint of taxpayers should be dismissed for failure to comply with the orders of the court. *Page 11 
Now, therefore,
IT IS THE OPINION OF THIS COURT that taxpayers' appeal is denied.
Dated this _____ day of July, 2010.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2009 edition.
[2] The reduction in the MAV of the property reduced the AV of the property for the 2006-07 tax year because it was the lesser value as compared to the RMV of the property. In accordance with ORS 308.146, AV equals the lesser of MAV or RMV.
[3] The county defended against the Complaint of taxpayers in the Magistrate Division but chose not to intervene in the Regular Division.
[4] The department did not call Camelia Bleoaja to testify. All references to testimony of taxpayer in the singular refer to Cornel Bleoaja.
[5] Under ORS 305.427, taxpayers, as the parties seeking affirmative relief, bear the burden of proving the contested facts. To sustain their burden of proof, taxpayers must prove their case by a preponderance of the evidence.
[6] ORS 305.425(3) provides: "All hearings and proceedings before the tax court judge shall be in accordance with the rules of practice and procedure promulgated by the court * * *."
The TCR-MD Preface provides, in part:
 "The Oregon Tax Court consists of two divisions: the Regular Division and the Magistrate Division. * * * If circumstances arise [in the Magistrate Division] that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."
[7] The taxpayer in Poddar appealed the value of his home for a tax year in which the home was only partially complete.Id. at 554. The taxpayer objected to the inspection and argued that evidence of the value of the completed home would not be admissible as evidence for the tax year in which the home was only partially complete. Id. at 555.
[8] It may be that no inspection took into account the construction progress that took place between January 1, 2007, and April 30, 2007; the record is unclear.
[9] Because taxpayers did not argue that the inspection violated their rights under Article I, section 9, of the Oregon Constitution, the court has limited its constitutional inquiry to theFourth Amendment to the United States Constitution.
The Fourth Amendment to the United States Constitution provides:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."