IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ANDREW N. MacRITCHIE              )
and RACHEL A. MacRITCHIE          )
                                 )
        Plaintiffs,               )      TC-MD 150402D
                                 )
    v.                            )
                                 )
CLACKAMAS COUNTY ASSESSOR,        )
                                 )
        Defendant.                )      **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered April 1, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal from an omitted property notice issued by Defendant, dated May 6, 2015, increasing the real market value and maximum assessed value of property identified as Account 01836767 (subject property) for 2009-10 through 2014-15 tax years. A trial was held in the Oregon Tax Courtroom on December 7, 2015, in Salem, Oregon. Andrew MacRitchie (MacRitchie) appeared and testified on behalf of Plaintiffs. Todd Cooper (Cooper) appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 7, and Exhibit 8, pages 1 and 2, were received without objection. Plaintiffs' Exhibit 8, page 3 was received over Defendant's objection. Defendant's Exhibits B through E were received without objection. Defendant's Exhibit A was received with objection. Defendant's Exhibits H and I were not received.

On November 30, 2015, Defendant filed a Motion to Dismiss Plaintiffs' Complaint (Motion) for failure to facilitate the inspection of the subject property. The court deferred ruling on the Motion until the trial date pursuant to Tax Court Rule-

Magistrate Division (TCR-MD) 7 D.  In support of its Motion, Defendant cited *Poddar v. Dept. of Revenue*, 328 Or 552 (1999) for the proposition that Defendant has a right to inspect the subject property and interference with that right could be grounds for dismissal of the case.  The court agrees with that general proposition.  However, at the time of Defendant's request for an inspection Plaintiffs no longer owned the subject property and did not have the ability to grant access for an inspection.[1]  In the court's prior Order Denying Site Inspection (November 16, 2015) Defendant was instructed to review the Tax Court Rules, specifically TCR 43 and TCR 55, in seeking to inspect property that was owned by a non-party to the case.  Defendant's Motion to Dismiss demonstrated that it has not done so.  Defendant's Motion to Dismiss is denied.

## I.  STATEMENT OF FACTS

MacRitchie testified that the subject property was built in 1999; he leased it in 2000 and subsequently purchased it in 2004.  He testified that in April 2010, Plaintiffs undertook a remodel of the kitchen and bathroom to better suit their lifestyle and for general maintenance.  MacRitchie testified that the following work was performed: refinish kitchen cabinets (which were dinged and sun-bleached) at a cost of $17,500; repaint kitchen and bathroom at a cost of $7,700; reposition the bathroom door and extend the opening by two feet to allow the door to open inwards and change double doors to a pocket door at a cost of $7,000; switch positions of the bath and showers, and replace a Jacuzzi tub with a soaker tub and related plumbing and electrical work at a cost of $22,300; replace granite in kitchen and extend center island to include a decorative

---

[1] Plaintiffs did try to facilitate an inspection of the property.  (*See* Ptf's Ltr at 11, Oct 14, 2015), Plaintiffs stated in their letter to the current owners "[w]e ask you if you would be willing to allow the Assessor to view the kitchen and master bathroom of your home.")

semicircular decorative display area and add a second level glass breakfast bar over the granite at a cost of $9,000; replace tiling in kitchen and bathroom at a cost of $15,000; move electrical outlets in bathroom and into changing room, add outlets to the kitchen island at a cost of $9,600; replace and reposition bathroom window for privacy at a cost of $3,400; sand and re-varnish the kitchen floor, (that was showing evidence of wear) at a cost of $2,500; and minor work items, including additional wall cabinets in bathroom, at a cost of $3,300. MacRitchie also testified that he spent around $6,200 for construction permit fees. MacRitchie testified that the renovations were completed and approved by the City of Lake Oswego in September 2010.

MacRitchie testified that the renovations were not done to increase the value of the property, but for maintenance and "like for like" replacements of existing items which were all in a good state of repair. He testified that an unforeseen change in his work location required Plaintiffs to put the subject property up for sale in May 2014. The property was sold in May 2015. (Def's Ex A at 38.) MacRitchie testified that just prior to the close of escrow he received information from his title insurance company that there was an issue regarding taxes on the property. MacRitchie testified that he attempted, from his new residence in New York, to resolve the tax issue with the county, resulting in a heated discussion. MacRitchie testified that he was forced to pay Defendant the taxes it demanded related to the remodel of the property so escrow could close on time.

Cooper testified he is a senior appraiser for Defendant. He testified that after passage of Measure 50, Defendant changed the way it valued properties, which may have caused a delay in Defendant reevaluating the subject property after its renovation. Defendant put a note on Plaintiff's property file until it could review Plaintiffs remodel.

When Defendant was contacted by a title insurance company, Cooper quickly prepared a mass appraisal review of the subject property and prepared an Omitted Property Notice. Cooper testified that he talked with MacRitchie by telephone and understood from the conversation that renovations to the subject property occurred in 2009. Cooper testified that he determined the added value of the improvements using the mass appraisal data at $41,240. Cooper determined that the additional values based on the renovations were as follows:

| Year | Addition RMV | Additional AV |
|------|--------------|---------------|
| 2009-10 | $37,907 | $24,639 |
| 2010-11 | $35,314 | $25,379 |
| 2011-12 | $33,122 | $26,140 |
| 2012-13 | $32,765 | $26,924 |
| 2013-14 | $33,747 | $27,732 |
| 2014-15 | $41,240 | $28,564 |

(Ptfs' Ex A at 1.)

In preparation for a trial in this case Cooper prepared an appraisal report. (Def's Ex A.) Cooper testified that he considered all three appraisal approaches to value the property but determined that the income approach was not meaningful for this residential home in a primarily owner-occupied area.

The appraisal report prepared by Defendant stated that the cost approach was the basis for the original valuation of the subject property. (Def Ex A at 9.) The values were determined using mass appraisal techniques based on valuation studies prepared by Defendant. (*Id.*)

In considering the market approach, Cooper selected six comparable properties, with comparables 1, 3 and 5 being the most similar to the subject property, and concluded that the "after remodel" value as of January 1, 2014, was $1,150,000. Cooper testified he

used a paired analysis selecting properties which had no remodel work performed with properties which had significant remodel work. He testified that this method kept other factors such as inflation and property value trends constant while showing differences in value based on improvements. Cooper testified that he then used an estimated 22 to 25 percent adjustment to account for the approximate amount of Plaintiffs' remodel of their home. Cooper testified that he ultimately concluded that, based on the paired analysis, the exception value should be $55,000, the difference between the "before remodel" estimate of value of $1,095,000 and the "after remodel" estimate of $1,150,000.

## II. ANALYSIS

The issue is the subject property's exception real market value for the 2009-10 through 2014-15 tax years. More specifically, whether the 2010 renovations by Plaintiffs to the subject property represented "[n]ew property or new improvements" to property under ORS 308.149(5)[2], and if so, the effect of those renovations on its real market value for the years in issue.

A.    *Standard of Proof*

Under ORS 305.427, the party seeking affirmative relief in this court bears the burden of proof, and "a preponderance of the evidence shall suffice to sustain the burden of proof." Preponderance of the evidence is the lowest degree of proof required by courts, and is satisfied by a showing that "the facts asserted are more probably true than false." *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958); *see also Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 402, 737 P2d 595 (1987) (*Cook* analysis of standards of proof "has been endorsed repeatedly" by the Oregon Supreme Court). In

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to the 2013 edition.

addition, this court has jurisdiction to determine the real market value of property "on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

In this case, Plaintiffs bear the burden of proving when the renovations were made to the subject property, whether the renovations were "improvements" justifying an exception value, and the amount of additional exception value. Defendant bears the burden of proving its contention that the exception real market value is higher than provided in its original Omitted Property Notice.

B.    *Years in Issue*

ORS 308.153 provides that if new property is added or improvements are made to property as of January 1 of the assessment year, the county may add exception value. Exception maximum assessed value is calculated by first determining the real market value of any improvements and then using a ratio to determine the maximum assessed value.

The evidence shows that Defendant believed Plaintiffs made renovations to the subject property in 2009, based on conversations between MacRitchie and Cooper. However, the testimony by MacRitchie and documents from Lake Oswego's Building Department (Ptfs' Ex 4), show those renovations did not begin until April 2010 and were not completed until September 2010. Since renovations were neither started nor completed by January 1 of 2009 or 2010, those tax years should not be included in the omitted property assessments. Plaintiffs' appeal is granted with regard to the 2009-10 and 2010-11 tax years.

/ / /

C.    *Were Renovations to the Subject Property Improvements?*

Generally, annual increases to maximum assessed value are capped at three percent. However, ORS 308.146(3)(a) provides that "new improvements to property" trigger an exception value. New improvements means changes in property value as the result of "[n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property." ORS 308.149(6)(a)(A). It does not include general maintenance and repair or minor construction. ORS 308.149(6)(b). Minor construction is defined as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(5).

Plaintiffs argued that renovations to the subject property did not represent "improvements" triggering an exception value change, but rather, were in part general maintenance and repair, and in part "like for like" replacements. Defendant conceded that some of the work performed such as painting and refinishing cabinet doors and hardwood floors represented general maintenance. Defendant asserted that work performed in the kitchen included extending an island and adding a display area, adding a second level of glass on the island to make a breakfast bar, changing granite surfaces, and changing tile all represented improvements. Defendant also asserted that reconfiguring the bathroom, replacing the bathtub, replacing a window, and moving the structural entrance to the bathroom were all improvements because the items were not in need of maintenance. Plaintiff conceded that the items improved were not in need of "maintenance" but were changed based on personal preference.

/ / /

Plaintiff's theory of "like for like" improvements is reflected in ORS 308.153(2)(a) which provides that "the value of new property or new improvements shall equal the real market value of the new property or new improvements reduced (but not below zero) by the real market value of retirements from the property tax account."  As a conceptual matter, replacing a 10 year old bathtub, even one that is not in need of maintenance, with a brand new bathtub is replacing older for newer; it is not "like for like."  Additionally, Plaintiffs argument is not well taken with respect to the kitchen island, the changes in granite and tile work, updated electrical work, or substantial changes in the bathroom window.  Those items are clearly improvements, creating an exception market value.

D.     *Effect of Improvements on Value*

Real market value is defined by ORS 308.205(1) as:

> "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

Three approaches are used to determine the value of real property: the sales comparison approach, the income approach, and the cost approach.  *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *see also* OAR 150-308.205-(A)(2)(a) (requiring county assessors to consider, but not necessarily apply, each of the three approaches).  "[W]hether in any given assessment one approach should be used exclusive of the others or is preferable to another or to a combination of approaches is a question of fact to be determined by the court upon the record."  *Pacific Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979).

/ / /

1.  *Plaintiffs' evidence*

Plaintiffs did not present evidence of value using any of the traditional valuation approaches. MacRitchie did present evidence of the costs of renovations of the subject property. As stated above, the court agrees with the parties that those portions of the renovation for painting and refinishing the wood floors were maintenance and should not be included in arriving at an exception value. What remains is: the bathroom door extension at $7,000; the bathroom work involving replacement and realignment of the shower and tub at $22,300; the kitchen granite, countertop and breakfast bar at $9,000; the tile work at $15,000; the electrical work at $9,600; the window replacement at $3,400, and the other miscellaneous minor work at $3,300. The total costs of improvements subject to exception value are approximately $69,600. However, Plaintiffs did not take cost evidence one step further to show how the cost factor would influence the real market value of the subject property. "Because new improvements are defined as 'changes in value' rather than the improvements themselves, it appears that the legislature intended to measure the increase in [real market value] of the remodeled property as opposed to the value of the improvements themselves." *Hoxie v. Dept. of Rev.*, 15 OTR 322, 326 (2001). It is impossible from Plaintiffs' evidence to determine an appropriate adjustment to value for the subject property using only costs of the remodel work. Thus, the court finds that Plaintiff has failed to meet its burden of proof.

2.  *Defendant's evidence*

Using a "paring" approach, Defendant found several comparable properties where no remodel was done and compared those properties with properties that had significant remodeling. Defendant testified that that approach was to keep other factors such as

market changes from affecting the valuation. The court's issue with Defendant's approach is systemic; no information was provided about the level of renovations performed on the comparable properties. Defendant's theory requires the court to treat all remodels as exactly the same. Additionally, in this case, the sample size, of only a couple of properties, was too small to remove doubts as to variation on the amount of remodel performed. The court is unable to rely on Defendant's appraisal. Defendant noted in its original "Omitted Property Notice" that the additional real market value in the 2014-15 year was $41,240 and that taxes were retroactively assessed. That approach is sustained as a result of a failure by either party to meet their respective burden of proof, with the caveat that there is no exception value for the for the 2009-10 and 2010-11 tax years.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court concludes that the renovations to the subject property in 2010 did result in exception real market value for the 2011-12 through 2014-15 tax years, but not for the 2009-10 and 2010-11 tax years. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted for the 2009-2010 and 2010-11 tax years, and denied for the 2011-12 through 2014-15 tax years.

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER THE DECISION OF THIS COURT that Defendant must revise its Omitted Property Notice to remove the assessment for the 2009-10 and 2010-11 tax years and refund to Plaintiffs any overpayment.

Dated this ____ day of April 2016.


                                                            _____

                                                            RICHARD DAVIS
                                                            MAGISTRATE

***If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.***

***This document was filed and entered on April 19, 2016.***