[No. 8320–9–III.   Division Three.   April 7, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN C. VONHOF, ET AL, *Appellants.*

34

*Richard Troberman* and *Timothy Ford,* for appellants.

*Allen C. Nielson, Prosecuting Attorney,* for respondent.

THOMPSON, J.—John C. Vonhof, Larry D. Bell, and Donald E. Noll appeal their convictions for manufacturing a controlled substance. They argue the trial court erred in refusing to suppress evidence seized pursuant to a search warrant issued on the basis of information supplied by a tax appraiser, and also because there was an insufficient basis for the warrant. We affirm.

Brian Royer, an appraiser with the Ferry County assessor's office, entered property owned by Mr. Vonhof and Mr. Bell to revalue the property for tax purposes. To reach the defendants' property, Mr. Royer had to pass through a locked gate. He obtained a key to open the gate from Francis Wisener, owner of the gate and across whose property the road to the defendants' property ran. Mr. Royer also passed through an open gate on the defendants' property. Several "No Trespassing" signs were posted on the gates and along the roadway leading to the defendants' property.

Mr. Royer proceeded to the defendants' residence and knocked and shouted to see if anyone was home. No one answered. At the suppression hearing, Mr. Royer testified he took photographs, measured the dimensions of a new porch addition on the residence and then examined the exterior of a shop building, which was 180 to 200 feet from the residence. The shop building was not on the tax rolls and never had been appraised. Mr. Royer knocked on the side of the shop building to determine whether it was insulated. As he approached an air vent, he noticed what he characterized as "the strong smell of marijuana". He continued to examine the exterior of the shop, and when he discovered the doors were open, he yelled into the building to determine if anyone was there. Mr. Royer did not enter either the residence or the shop building. He left after spending 10 to 15 minutes on the property, and immediately told the sheriff of his observations.

Mr. Royer provided a written statement for the sheriff, in which he said he had smelled

the strong smell of marijuana. . . . It was a strong odor that smells stinky like a skunky, musty odor. I have smoked & been around marijuana in the past years & around the type that is grown indoors & is highly cultivated & that is the type of odor I smelled coming from this area of the bldg. I have smelled mature &/or mature growing marijuana in the past on at least 10 ocassions [*sic*]. It has a very distinct odor.

Sheriff Richard Baldwin applied for a search warrant the next day. His affidavit, to which Mr. Royer's statement was attached, stated:

On April 7, 1986 at about 5:00 p.m. I interviewed Brian Royer at the Ferry County Sheriff's Office in Republic. At the conclusion of the interview I had Mr. Royer smell a small quantity of dried marijuana. He stated the odor was similar to the odor in the vented air. He stated the vented odor was more pungent, or stronger, and more like the odor of mature growing, or drying, marijuana.

On the basis of this information, a warrant was issued to search the shop building. The search, conducted later that

day, revealed marijuana growing in the shop building. A second warrant was issued based on evidence seized in the shop, authorizing a search of the residence and two vehicles. This search resulted in the seizure of evidence of the defendants' ownership and occupancy of the residence.[1]

The defendants were charged with manufacturing a controlled substance. They moved for suppression of the evidence, and the trial court made the following conclusions, pursuant to CrR 3.6:

A. Appraiser's Entry Onto the Defendants' Property.

1. Brian Royer was not acting as an agent for law enforcement officers; he was acting in his capacity as an appraiser for the Ferry County Assessor's Office. Further, Mr. Royer's entry and inspection was not an administrative search. The entry and inspection did not come within the protections to individual rights guaranteed by the Fourth Amendment to the United States Constitution and Art. 1, Sect. 7 of the Washington Constitution.

2. Mr. Royer acted pursuant to a legitimate governmental purpose when he entered the defendants' property; namely to assess the property's value.

3. The presence of no trespassing signs does not insulate individuals from entry onto their property. Such an expectation of complete privacy is not reasonable under applicable law.

4. The law of trespass does not afford an individual the same protections as afforded by the Fourth Amendment to the United States Constitution and Art. 1, Sect. 7 of the Washington State Constitution. A governmental official who is not acting as a law enforcement officer or an agent of a law enforcement officer can trespass on another's land without violating the other person's constitutional rights.

5. This case is controlled by *State v. Ludvik,* 40 Wn. App. 257, 698 P.2d 1064 (1985).

B. Citizen Informant's Ability to Identify Marijuana— On Face of Affidavit.

1. The citizen informant's ability to identify marijuana is shown by sufficient facts stated in the affidavit. These

---

[1]Defendant Noll apparently had no ownership interest in the property, but the parties appear to agree that Mr. Noll's privacy interests are identical to those of the other defendants.

facts provided the magistrate with enough information to determine if the informant had adequate skill, training or experience to identify marijuana.

The trial court denied the motion to suppress, and the defendants were convicted on a stipulated record. This appeal followed.

The first issue is whether the appraiser's activities constituted an unconstitutional warrantless search. Relying on *State v. Ludvik*, 40 Wn. App. 257, 698 P.2d 1064 (1985), the trial court concluded that the visit by Mr. Royer was not a search, within the meaning of the Fourth Amendment or Const. art. 1, § 7, because he was not acting as a law enforcement officer or the agent of a law enforcement officer.

In *Ludvik*, a state game agent observed suspicious activities at the house across the street from his home. *Ludvik*, at 259. In response to the defendant's argument that the game agent's observations constituted a governmental search, the court observed that constitutional protections against unreasonable searches apply only to governmental actions, not to private citizens acting on their own initiative. *Ludvik*, at 262. The court held the game agent was not acting in his official capacity at the time of his observations. *Ludvik*, at 263.

This reasoning cannot be applied. Mr. Royer was acting not as a private citizen, but as an appraiser for the county assessor's office. He was acting as a governmental official. The State argues, nevertheless, that his activities did not invoke constitutional protections because he was not acting with law enforcement encouragement and had no enforcement authority. However, direct law enforcement involvement is not a prerequisite to application of the protections of either the Fourth Amendment or Const. art. 1, § 7. Those protections extend to the activities of school officials, *Kuehn v. Renton Sch. Dist. 403*, 103 Wn.2d 594, 694 P.2d 1078 (1985), building and health inspectors, *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 56 L.

Ed. 2d 305, 98 S. Ct. 1816 (1978), and federal tax agents, *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 50 L. Ed. 2d 530, 97 S. Ct. 619 (1977). As the Supreme Court observed in *New Jersey v. T.L.O.,* 469 U.S. 325, 335, 83 L. Ed. 2d 720, 105 S. Ct. 733, 739 (1985), "it would be 'anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.' *Camara v. Municipal Court, supra,* at 530." Nor is it essential that the governmental agent has enforcement authority:

> [T]here is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman, or because his purpose is to ascertain the cause of a fire rather than to look for evidence of a crime, or because the fire might have been started deliberately.

*Michigan v. Tyler,* 436 U.S. 499, 506, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978). It was error to conclude that Mr. Royer's visit was not a search simply because he was not a law enforcement officer or the agent of a law enforcement officer.

The State argues the Mr. Royer's visit nevertheless was not an unconstitutional search. It relies on the rationale in *State v. Seagull,* 95 Wn.2d 898, 901–03, 632 P.2d 44 (1981):

> The mere observation of that which is there to be seen does not necessarily constitute a search within the meaning of the Fourth Amendment. *State v. Glasper,* 84 Wn.2d 17, 20, 523 P.2d 937 (1974); *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968) [*cert. denied,* 393 U.S. 1081, 21 L. Ed. 2d 773, 89 S. Ct. 855 (1969)]; *Recznik v. Lorain,* 393 U.S. 166, 21 L. Ed. 2d 317, 89 S. Ct. 342 (1968). As stated in 1 W. LaFave, *Search and Seizure* § 2.2, at 240 (1978) (hereinafter LaFave):
>
> > As a general proposition, it is fair to say that when a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are

used, that detection does not constitute a "search" within the meaning of the Fourth Amendment.

. . . The presence of an officer within the curtilage of a residence does not automatically amount to an unconstitutional invasion of privacy. Rather, it must be determined under the facts of each case just how private the particular observation point actually was. It is clear that police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house. In so doing they are free to keep their eyes open. *See generally* LaFave, at § 2.3. An officer is permitted the same license to intrude as a reasonably respectful citizen. *United States v. Vilhotti,* 323 F. Supp. 425 (S.D.N.Y.), *aff'd in part and rev'd in part,* 452 F.2d 1186 (2d Cir. 1971), *cert. denied,* 406 U.S. 947, 32 L. Ed. 2d 335, 92 S. Ct. 2051 (1972). However, a substantial and unreasonable departure from such an area, or a particularly intrusive method of viewing, will exceed the scope of the implied invitation and intrude upon a constitutionally protected expectation of privacy.

What is reasonable cannot be determined by a fixed formula. It must be based on the facts and circumstances of each case. *Ker v. California,* 374 U.S. 23, 33, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963).

(Footnote omitted.) In *Seagull,* a police officer knocked on a door of a house; receiving no answer, he walked through the yard to another entrance. His route, not the most direct, took him close to outbuildings and a greenhouse, where he observed what he believed was a marijuana plant. *Seagull,* at 900. The court concluded the officer's actions did not constitute a search, based on the following factors: (1) He did not spy into a residence; (2) his route was a normal one, considering his purpose; (3) he was not secretive, but acted openly in an honest attempt to talk with the occupants; (4) he did not get as close as he could have, but kept his distance; (5) the discovery was accidental; (6) he did not create an artificial vantage point; (7) the acts occurred in daylight; and (8) he strayed only slightly from the most absolutely direct route necessary to conduct his "legitimate police business". *Seagull,* at 905.

Mr. Royer was on legitimate business when he inspected the defendants' property. RCW 84.40.025 authorizes the assessor to visit, investigate and examine property at any reasonable time.

Access to property required. For the purpose of assessment and valuation of all taxable property in each county, any real or personal property in each county shall be subject to visitation, investigation, examination, discovery, and listing at any reasonable time by the county assessor of the county or by any employee thereof designated for this purpose by the assessor.

In any case of refusal to such access, the assessor shall request assistance from the department of revenue which may invoke the power granted by chapter 84.08 RCW.

RCW 84.40.025.

The presence of "No Trespassing" signs cannot be characterized as "refusal to such access" under the statute.

A duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably necessary to such performance or exercise, if, but only if, all the requirements of the enactment are fulfilled.

Restatement (Second) of Torts § 211 (1965). In addition, the presence of the "No Trespassing" signs does not increase the constitutional level of privacy interests enjoyed by the defendants. *See Oliver v. United States,* 466 U.S. 170, 179, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984).

Because Mr. Royer was legitimately on the property, application of the *Seagull* factors is appropriate: (1) He did not spy into the residence, and never entered either building; (2) his route was a normal one, considering his purpose of inspecting the new structure; (3) he acted openly and honestly, by knocking at the residence and yelling outside the shop building; (4) he apparently got very close to the shop, but no closer than necessary to conduct his inspection, and he did not enter the shop's open doors; (5) his discovery was accidental; (6) he did not create an artificial

vantage point to smell the growing marijuana; (7) his inspection occurred in the daytime; and (8) he went only where he needed to go to conduct his inspection.

Thus, under the *Seagull* rationale, Mr. Royer's visit was not a search within the meaning of the Fourth Amendment or of Const. art. 1, § 7, and the trial court's refusal to suppress the evidence was proper.

▮ The second issue is whether Mr. Royer's olfactory perceptions established probable cause to search. The question of whether probable cause justifies the issuance of a warrant should not be viewed in a hypertechnical manner. *State v. Walcott,* 72 Wn.2d 959, 962, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890, 21 L. Ed. 2d 169, 89 S. Ct. 211 (1968); *United States v. Ventresca,* 380 U.S. 102, 109, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

> Considering all the facts and circumstances sworn to by the person seeking the warrant, the issuing magistrate must have good reason to believe criminal activity has occurred. *State v. Smith,* 93 Wn.2d 329, 352, 610 P.2d 869 [*cert. denied,* 449 U.S. 873, 66 L. Ed. 2d 93, 101 S. Ct. 213] (1980); *State v. Patterson,* 83 Wn.2d 49, 515 P.2d 496 (1973).

*State v. Matlock,* 27 Wn. App. 152, 155, 616 P.2d 684 (1980). "The determination of probable cause should be given great deference by reviewing courts". *Seagull,* at 907.

In *Matlock,* the court held that probable cause was lacking because there was no showing in the affidavit that the officer had "the necessary skill, training or experience to identify marijuana plants on sight . . ." *Matlock,* at 156. In *Seagull,* the affidavit was sufficient, even though the officer's observation was incorrect, because "it stated more than a mere personal belief. It also stated the factual, underlying circumstances upon which that belief was premised". *Seagull,* at 907.

Here, Mr. Royer's belief that what he smelled was growing marijuana was presented to the magistrate as more than a mere personal belief. He specifically described the odor, and he stated he had smelled mature or growing marijuana

at least 10 times before. The issuing magistrate found this to be factually sufficient to issue a search warrant. In so doing he did not abuse his discretion.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Reconsideration denied May 5, 1988.

Review denied by Supreme Court September 1, 1988.