2011 OK 12

**Joseph W. ATKINSON, Trustee of the Joseph W. Atkinson Trust, dated May 22, 2002, Petitioner,**

v.

**The Honorable Noma D. GURICH, District Judge of Oklahoma County District Court, State of Oklahoma and Leonard Sullivan, Oklahoma County Assessor, Respondents.**

No. 108,783.

Supreme Court of Oklahoma.

Feb. 22, 2011.

Raymond A. Vincent, Oklahoma City, OK, for Petitioner.

Gretchen Crawford, Assistant District Attorney, Oklahoma City, OK, for Respondents.

KAUGER, J.:

¶1 The issue presented is whether the trial court abused its discretion in ruling that the county assessor can enter the home of a taxpayer who challenged the assessor's fair market value assessment. The fourth amendment of the United States Constitution,[1] and art. 2, § 30 of the Okla. Const., protect the right of the people to be secure in their houses and effects against unreasonable searches. These protections are incorporated into 68 O.S.2001 § 2818(C)(1) and (D)[2] which prohibit the county assessor from entering the home of a taxpayer, unless the taxpayer requests a visual inspection of household personal property because its val-

ue is disputed. Because Oklahoma County no longer taxes household personal property there is neither a reason nor a right allowing the assessor to enter residential property. Accordingly, we hold that: 1) in the absence of a dispute over the valuation of household personal property and a request by the taxpayer, 68 O.S.2001 § 2818(C)(1) and (D)[3] do not authorize the County Assessor to enter residential property; and 2) 12 O.S. Supp. 2008 § 3234(A)(2)[4] of the Oklahoma Discovery Code does not provide an exception when entry to residential property is otherwise explicitly precluded by statute.

## FACTS

¶2 The homeowner, Joseph W. Atkinson, trustee of the Joseph W. Atkinson trust, filed a timely formal protest with the Oklahoma County Board of Equalization in 2009, challenging the fair market value assessed on his residence. The protest was denied and the homeowner sought *de novo* review in the District Court of Oklahoma County in May of 2009 concerning the 2009 fair market value, the taxable market value, and the gross assessed value. Thereafter, the Oklahoma County Assessor served the homeowner with a request to enter his home in order to inspect the property and take photographs pursuant to the 12 O.S. Supp.2008 § 3234(A)(2).[5] The homeowner sought a pro-

1. The U.S. Const. amend. IV provides:

 The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. Title 68 O.S.2001 § 2818(C)(1) and (D) provides:

 C. In the performance of his duties, the county assessor, or his duly appointed and authorized deputy, shall have the power and authority to:
 1. Go upon any premises and enter any business building or structure and view the same and the property therein, and to view, inspect or appraise any property located within his county, however, the county assessor shall not have the power or authority to enter the private dwelling of a taxpayer except as provided for in subsection D of this section;

 D. In the event of a dispute concerning the valuation of household personal property, a taxpayer may request the county assessor to perform a visual inspection of such property.

3. Title 68 O.S.2001 § 2818, see note 2, supra.

4. Title 12 O.S. Supp.2008 § 3234(A)(2) provides:
 A. SCOPE. Any party may serve on any other party a request:
 2. To permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon, within the scope of subsection B of Section 3226 of this title.
 This statute was amended in 2010, however, pertinent portions remain unchanged. Subsection B of 12 O.S.Supp.2008 § 3226 encompasses the scope of discovery and its limits. It is not relevant to this cause.

5. Title 12 O.S. Supp.2008 § 3234, see note 3, supra.

tective order relying on 68 O.S.2001 § 2818(C)(1) and (D),[6] the specific statutory prohibition of inspection contained in the ad valorem tax code. The trial court denied the motion for protective order and granted the assessor's request, and the taxpayer sought relief from this Court.

## I.

¶3 **IN THE ABSENCE OF A DISPUTE OVER THE VALUATION OF HOUSEHOLD PERSONAL PROPERTY AND A REQUEST BY THE TAXPAYER, 68 O.S.2001 § 2818(C)(1) and (D) DO NOT AUTHORIZE THE COUNTY ASSESSOR TO ENTER RESIDENTIAL PROPERTY.**

 ¶4 The homeowner seeks a writ of prohibition arguing that 68 O.S.2001 § 2818(C)(1) and (D)[7] prevent the trial court from ordering him to allow the assessor to enter his home. The assessor argues that because the homeowner has gone beyond an "informal" or "formal" protest that § 2818(C)(1) and (D) no longer apply. Instead, the assessor asserts that once a tax protest is appealed to district court 12 O.S. Supp.2008 § 3234(A)(2)[8] of the discovery code controls. We disagree with the assessor.

¶5 Contrary to the assessor's assertions, 68 O.S.2001 § 2818(C)(1) and (D)[9] do not solely apply to informal and formal protests. The words "informal," "formal," and "protest" do not appear in the statute and there is no reference to disputes regarding property valuation except in the instance of a dispute regarding the valuation of household personal property. Permission to enter a home is conditioned on a dispute over valuation of household personal property. Entry to the home is based on the taxpayer's request and it is predicated on a specific statute. If there is no dispute over personalty, there is no right to enter.

¶6 The fourth amendment of the United States Constitution[10] and art. 2, § 30 of the Okla. Const.[11] protect a citizen's right to be free from unreasonable searches and seizures. The United States Supreme Court precedents have long recognized the fourth amendment's applicability to civil actions.[12] Although this Court has never addressed the issue of whether a county assessor may enter the home of a taxpayer, some courts have permitted them to do so.[13] However,

6. Title 68 O.S.2001 § 2818, see note 2, supra.

7. Title 12 O.S. Supp.2008 § 3234, see note 3, supra.

8. Title 12 O.S. Supp.2008 § 3234, see note 3, supra.

9. Title 68 O.S.2001 § 2818, see note 2, supra.

10. The U.S. Const. amendment IV, see note 1, supra.

11. The Okla. Const. art 2., § 30 provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.

12. *See Soldal v. Cook County Ill.*, 506 U.S. 56, 67, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *O'Connor v. Ortega*, 480 U.S. 709, 714, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *New Jersey v. T.L.O.*, 469 U.S. 325, 334–335, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *Michigan v. Tyler*, 436 U.S. 499, 504–506, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312–313, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

13. *See Poddar v. Department of Revenue*, 328 Or. 552, 563, 983 P.2d 527 (1999) (Court allowed the Department of Revenue to enter the home of a taxpayer who challenged the county assessor's valuation in tax court under the state's discovery code and the fourth amendment of the U.S. constitution because the property was only partially completed during the time the valuation was challenged and the assessor could only determine the difference between what was partially completed and fully completed by entering the home.). *But see State v. Vonhof*, 51 Wash.App. 33, 38–39, 751 P.2d 1221 (Wash.App.1988) (Court found that the fourth amendment was not violated and refused to suppress evidence of marijuana discovered as a result of a search warrant secured through testimony of a county assessor who smelled the drugs from the curtilage of shop house on the property of a home he was valuing. The court noted that the assessor did not enter the interior of the premises and that all observations were made in places he had the statutory authority to be.).

Oklahoma's statute may provide greater protection than other states [14] because of the explicit statutory prohibition against county assessors entering the homes of taxpayers pursuant to 68 O.S.2001 § 2818(C)(1) and (D).[15]

¶ 7 On November 3, 1992, voters elected to adopt state question 648 which amended art. 10, § 6(B) of the Okla. Const. and allowed counties the option of voting to eliminate household personal property taxes. Article 10 § 6(B) provides:

B. The board of county commissioners of any county may call a special election to determine whether or not household goods of the heads of families and livestock employed in support of the family located within the county shall be exempt from ad valorem taxation. Such an election shall also be called by the board upon petition signed by not less than twenty-five percent (25%) of the registered voters of the county. Upon passage of the question, the exemption provided for in this subsection shall become effective on January 1 of the following year.

On April 4, 1995, Oklahoma County voted on a proposition to eliminate household property tax. It stated:

Shall the household goods of the heads of families and livestock employed in support of the family located within Oklahoma County be exempt from ad valorem taxation?

The voters elected to exempt household personal property from ad valorem taxation by a vote of 35,324 to 5,765.

¶ 8 Title 68 O.S.2001 § 2818(C)(1) and (D) [16] not only describe the power and authority of the county assessor, they also provide a remedy for taxpayers involved in disputes regarding the valuation of household personal property. The language of the statute authorizes the assessor "in the performance of his duties" to inspect and appraise property in his county. However, the statute *explicitly* refuses to give the assessor power or authority to enter the private dwelling of a taxpayer unless the taxpayer requests it because of a "dispute concerning the valuation of household personal property." [17]

¶ 9 This cause concerns a dispute over the valuation of fair market value, the taxable market value, and the gross assessed value, not a valuation of household personal property. No other statute, and neither the Oklahoma constitution nor the United States Constitution allow such governmental intrusion. Here, there is no dispute over household personal property and Oklahoma County does not collect taxes on household personal property.

¶ 10 Instead, fair market valuation of residential property is conducted pursuant to 68 O.S.2001 § 2829 [18] which sets forth the mass

14. *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

15. Title 68 O.S.2001 § 2818, see note 2, supra.

16. Title 68 O.S.2001 § 2818, see note 2, supra.

17. Title 68 O.S.2001 § 2818, see note 2, supra.

18. Title 68 O.S.2001 § 2829 provides:
A. Each county assessor, in order to comply with the provisions of Section 17 of this act requiring the annual valuation of all taxable real and personal property within the county, shall establish the fair cash value of such taxable property using an accepted mass appraisal methodology.
B. For purposes of this section "accepted mass appraisal methodology" shall mean the process for making estimates of fair cash value for a property about which no direct or timely information is available concerning economic value by using known information about the property characteristics, location, use, size, sales price and other information of similar properties. Such mass appraisal methodology may include multiple regression analysis or other statistical techniques for mass appraisal. If information of similar properties is not available in the taxing jurisdiction, the county assessor may use other applicable regional or national information to annually determine the fair cash value of a property estimated at the price it would bring at a fair voluntary sale as provided in Section 17 of this act.
C. Each county assessor shall utilize the information gathered from the visual inspection of real property conducted during each year of the four-year cycle for such inspections and shall conduct such statistical calculations using the data so acquired together with sales price or other information available as may be required to make accurate estimates of fair cash values for all taxable real or personal property within the county each year. The results of such calculations shall be recorded on the assessment roll of the county on an annual basis

appraisal methodology as a process which uses known information about the property's characteristics such as location, use, size, sales price and other information from similar properties. The county assessor is required to physically visit the property every four years and, by the assessor's own admission, private residences are not entered during the valuation process.[19] There is no information to be gained by entering the taxpayer's home that is necessary for a fair market valuation. Even if the inside of the taxpayer's home is lavish it is likely that the home would just be over-built for the area and the taxpayer would have invested more into the home than its fair market value.

¶ 11 Pursuant to 68 O.S.2001 § 2829(B) and (C),[20] worth is dependent on known information about the property's characteristics such as location, use, size, sales price, and other information from similar properties. None of these factors involve the interior of a home because features in some homes are immeasurable in price, perhaps because they are one of a kind or very rare. This is why the mass appraisal methodology process is based on objective data which requires the analysis of multiple properties and factors.[21] If those unique features were relevant, in order for them to be considered in a valuation, they would have to be compared to the unique features of comparable properties. The county assessor would have to enter every comparable home to compare interior features, which would contravene the rationale behind the fourth amendment.[22]

## II.

¶ 12 **TITLE 12 O.S. Supp.2008 § 3234(A)(2) OF THE DISCOVERY CODE DOES NOT ALLOW THE COUNTY ASSESSOR TO ENTER RESIDENTIAL PROPERTY WHEN IT IS OTHERWISE EXPLICITLY PRECLUDED BY STATUTE.**

¶ 13 The assessor argues that because the parties are involved in a trial, the discovery code applies to these proceedings. Just because we have a discovery code does not mean that it can be used to discover undiscoverable information. The statute, which prohibits entry into a taxpayer's home unless there is a dispute over household personal

---

in order to reflect any increase or decrease in the fair cash value of any property in any year. D. The statistical analysis required by this section shall be performed within each county using such computer facilities as may be available, but shall be conducted in accordance with procedures established for the uniform mass appraisal program established by the Oklahoma Tax Commission.

19. Respondent's Brief at p. 4 provides:

While the county assessor views the exterior of each parcel of real property every four years, the county assessor does not enter into private residences during its annual valuation process.

20. Title 68 O.S.2001 § 2829, see note 18, supra.

21. Title 68 O.S.2001 § 2829 see note 18, supra.

22. The relevant portions of the Quartering Act of 1765 required colonies to:

... billet and quarter the officers and soldiers, in his Majesty's service, in the barracks provided by the colonies; and if there shall not be sufficient room in the said barracks for the officers and soldiers, then ... in inns, livery stables, ale houses, victualling houses, and the houses of sellers of [liquor] ... and in case there shall not be sufficient room for the officers and soldiers in such barracks, inns, vict-

ualling and other publick ale houses ... are hereby required to take, hire and make fit for the reception of his Majesty's forces, such and so many uninhabited houses, outhouses, barns, or other buildings, as shall be necessary, to quarter therein the residue of such officers and soldiers for whom there should not be room in such barracks and publick houses as aforesaid . . .

The Quartering Act of 1774 included the same requirements. These acts were so abhorred by the colonists that they served as part of the basis for America's split from England and were included in the reasons outlined in the Declaration of Independence for the separation. The Declaration of Independence states:

The history of the present King of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute Tyranny over these States. To prove this, let Facts be submitted to a candid world ... For quartering large bodies of armed troops among us ...

The Acts were also directly responsible for the Third Amendment of the United States Constitution which states:

No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

Don R. Gerlachi, *A Note on the Quartering Act of 1774*, 80 The New Eng. Quart. 39 (1966).

property, may not be transmogrified into a free-wheeling invasion of privacy. Title 12 O.S. Supp.2008 § 3234(A)(2),[23] allows "entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property." [24]

¶ 14 It is well settled that when a court is construing seemingly conflicting statutes that a specific statute controls over one of more general applicability.[25] The general discovery code does not override the statutory limits placed on the county assessor by the law. Title 68 O.S.2001 § 2818(C)(1) and (D) explicitly prohibit a county assessor from entering the home of a taxpayer *unless* the taxpayer requests it *and* it involves a dispute over the valuation of household personal property.[26] The right of the Oklahoma county assessor to enter private property does not exist because Oklahoma County does not tax household personal property.[27] This cause can be likened to an attempt to discover medical records to determine the extent of personal injuries when an unoccupied car is sideswiped. The statute protects the sanctity of one's home. In the absence of a challenge to household personal property and a request by the taxpayer there can be no entry.

**23.** Title 12 O.S. Supp.2008 § 3234, see note 3, supra.

**24.** *Id.*

**25.** *Duncan v. Oklahoma Department of Corrections,* 2004 OK 58 ¶ 6, 95 P.3d 1076; *Milton v. Hayes,* 1989 OK 12 ¶ 7, 770 P.2d 14.

**26.** Title 68 O.S.2001 § 2818, see note 2, supra.

**27.** If no cause of action exists, there is no right to discovery. A law suit does not give the county assessor the power to go beyond this authority. The fact that a judge ordered it makes it no more valid than being ordered to house redcoats. See discussion note 22, supra.

**28.** The adage "Every man's home is his castle," has been honored as far back as 1604, when *Semayne's Case,* 5 Co. Rep. 91, 77 Eng. Rep. 194 (K.B.1604), was decided in English courts. *Se-*

## CONCLUSION

¶ 15 The trial court has given the county assessor permission the law has not. The privacy afforded citizens in their homes is one of the most valued tenets of this society.[28] The law goes to great efforts to protect the sanctity of a person's home and certainly more than a tax valuation should be allowed to disturb it. Because the privacy of persons in their homes is of paramount importance, we assume original jurisdiction and issue a writ of prohibition to ensure that this right remains as protected as the framers of our constitutions intended it to be.

**ORIGINAL JURISDICTION ASSUMED. WRIT OF PROHIBITION GRANTED CAUSE REVERSED AND REMANDED.**

COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, JJ., concur.

TAYLOR, C.J., with whom WINCHESTER and REIF, JJ., join, dissenting.

¶ 1 The property owner has requested a trial de novo in District Court. The issue at this trial will be the fair market value of the home. That presents questions of fact for the trial judge. A fair trial will require a full presentation of evidence and witnesses. Both parties are entitled to the full discovery afforded any party in a trial in district court. That includes the right to inspect the exteri-

*mayane's* recognized a homeowner's right to protect his home from unlawful entry, even if the intruders were agents of the King, but also recognized the agents' ability to enter if it was done lawfully.

Few amendments were as direct a result of the colonists' experiences with England and its King as the fourth amendment. The United States Supreme Court has acknowledged that the fourth amendment gets its roots from *Entick v. Carrington,* 95 Eng. Rep. 807 (K.B.1705), the seminal English cases against state officers who raided the homes of suspected libelers to find evidence of their wrongdoing. The Court referred to it as a "great judgment," "one of the landmarks of English liberty," "one of the permanent monuments of the British Constitution," and a guide to an understanding of what the Framers meant in writing the fourth amendment. *Boyd v. United States,* 116 U.S. 616, 626, 6 S.Ct. 524, 29 L.Ed. 746 (1886), *rejected by Warden Md. Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

or and interior construction of the property in question in order to fully inform the fact-finder of all relevant and material evidence. There can be no fair trial without the opportunity to present all admissible evidence to the trial judge. The property owner asked for a trial in district court and now that trial should proceed in a regular and routine fashion in accordance with the rules of evidence and discovery.