# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69357-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ARON CLARK HOVANDER, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: April 21, 2014 |
| | ) | |

Cox, J. — Aron Hovander appeals his judgment and sentence based on his conviction of one count of unlawful manufacture of a controlled substance, marijuana. We hold that probable cause existed to support the issuance of the second warrant to search the milking parlor and office equipment building where the marijuana was seized. A Franks hearing was not required under the circumstances of this case. We also hold that the independent source doctrine supports our conclusion that the evidence was legally seized. None of the other arguments that Hovander advances warrant reversal of the denials of his motions to suppress and reconsider. We affirm.

On October 12, 2011, at 3:30 p.m., Deputy Sheriff Anthony Paz and a Whatcom County prosecutor sought a search warrant for 5268 Olson Road in Ferndale, Washington. Hovander is the owner of the property.

Deputy Paz testified that the property has six buildings—four barns and an attached milking parlor and office equipment building. He stated that he was

investigating the crime of manufacturing marijuana and wanted to search the milking parlor and office and equipment building.

Deputy Paz described previous visits to the property. He stated that the week prior he was on Olson Road with another deputy and "could actually smell marijuana from Olson Road."

He also testified that he went back to the property with a different deputy on October 11 to investigate further. He testified that they walked up to two particular buildings—the milking parlor and office building—and could smell an obvious odor of growing marijuana and could hear fans in the buildings. Based on Deputy Paz's testimony, the judge issued the first search warrant.

The State did not execute this first warrant. The prosecutor was concerned that the deputies had trespassed during the October 11 investigation when they went up to the buildings on Hovander's property. The prosecutor told Deputy Paz to return to the farm and verify that he could smell the marijuana from public areas.

The State later conceded that some of the information acquired during the October 11 trespass was wrongfully obtained. Accordingly, the parties agreed that portions of the transcript for the first warrant would be excised. This record reflects the transcript, as excised. We consider only those portions of this record to which the parties agreed below.

On October 13, 2011, at 11:45 a.m., Deputy Paz testified again before the same judge who previously authorized the first warrant. The prosecutor stated that Deputy Paz had "some observations regarding [the barns at the Hovander

property] other than what [they] talked about yesterday." Specifically, this testimony reflected information that Deputy Paz obtained following his conversation with the prosecutor and additional investigation on his third visit to the property on October 12.

Deputy Paz testified that he was on Olson Road the night of October 12 and could again smell an obvious odor of growing marijuana emanating from the property (third smell from Olson Road). He again described the two prior occasions where he had smelled marijuana from the same location on Olson Road—October 7 (first smell from Olson Road) and October 11 (second smell from Olson Road).

Additionally, Deputy Paz described his extensive training and experience in the identification of controlled substances, including marijuana. He also testified that he reviewed power bills from the Hovander farm, and that the power consumption was 10 times above the average for the state of Washington. The testimony from this second hearing was incorporated as an addendum to the record. The court issued a second warrant.

Following execution of the second search warrant on the milk parlor and office building, the deputies discovered a large scale marijuana growing operation, with over 500 marijuana plants under cultivation.

The State charged Hovander by second amended information with one count of unlawful manufacturing of a controlled substance, marijuana. He moved to suppress all evidence seized as a result of the milk barn property search authorized by the second warrant.

Hovander also argued for a hearing pursuant to Franks v. Delaware[1] to determine if any material information as to probable cause for the issuance of the second warrant was either misrepresented or omitted. Further, he moved to suppress all evidence acquired after the "illegal seizure of electrical power consumption records."

After the suppression hearing, the superior court denied Hovander's motions. The court later entered its written findings of fact and conclusions of law.

Hovander twice moved for reconsideration. The superior court denied both motions.

Hovander agreed to a stipulated bench trial. The superior court found Hovander guilty, as charged, and entered its judgment and sentence.

Hovander appeals.

## MOTION TO SUPPRESS

Hovander challenges the validity of the second search warrant, the authority for seizing the marijuana and other evidence. He argues that the evidence supporting the application for this warrant was insufficient to support probable cause. He claims that the investigating officer was reckless in failing to disclose information to the issuing judge. He also argues that the search warrant is defective because it did not establish that the suspected grow operation was not legal. Finally, he argues that the search was tainted by the prior illegal trespass. We disagree with all arguments.

---

[1] 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

*Probable Cause*

Hovander first argues that "the evidence acquired outside of the unlawful trespass as contained in the search warrant testimony does not establish probable cause." We disagree.

To establish probable cause, the affidavit must set forth "sufficient facts to convince a reasonable person of the probability the defendant is engaged in criminal activity and that evidence of criminal activity can be found at the place to be searched."[2] The judicial officer issuing the warrant is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit.[3]

In reviewing a probable cause determination, appellate courts review the same evidence presented below.[4] Review is limited to the four corners of the affidavit supporting probable cause.[5] The trial court's assessment of probable cause is a legal conclusion that an appellate court reviews de novo.[6]

Affidavits for search warrants are to be interpreted "'in a commonsense manner, rather than hypertechnically, and any doubts are resolved in favor of the warrant.'"[7]

---

[2] State v. Lyons, 174 Wn.2d 354, 359, 275 P.3d 314 (2012).

[3] State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

[4] State v. Chamberlin, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007).

[5] State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

[6] Chamberlin, 161 Wn.2d at 40.

[7] Lyons, 174 Wn.2d at 360 (quoting State v. Jackson, 150 Wn.2d 251, 265, 76 P.3d 217 (2003)).

"When an officer who is trained and experienced in marijuana detection actually detects the odor of marijuana, this by itself provides sufficient evidence to constitute probable cause justifying a search."[8] Washington courts have upheld search warrants based solely or largely on olfactory observations.[9] Courts emphasize that when considering the adequacy of smell observations to support probable cause, the sufficiency of the observations depends on the officer's experience and expertise.[10] Such expertise is "critical" to the analysis.[11] An officer's "sense observations must consist of more than mere personal belief."[12]

Additionally, a magistrate need only draw the reasonable inference that the odor is connected to the defendant's residence.[13]

We first note that the State, in its briefing, argued that we review for abuse of discretion the determination for probable cause for issuance of a search warrant, relying on State v. Chenoweth.[14] At oral argument, the State properly

---

[8] State v. Olson, 73 Wn. App. 348, 356, 869 P.2d 110 (1994).

[9] See, e.g., State v. Johnson, 79 Wn. App. 776, 782, 904 P.2d 1188 (1995); State v. Remboldt, 64 Wn. App. 505, 510-11, 827 P.2d 282 (1992); State v. Vonhof, 51 Wn. App. 33, 41-42, 751 P.2d 1221 (1988).

[10] See, e.g., Johnson, 79 Wn. App. at 780-82; Olson, 73 Wn. App. at 356; Remboldt; 64 Wn. App. at 510.

[11] Johnson, 79 Wn. App. at 780.

[12] Id.

[13] See State v. Petty, 48 Wn. App. 615, 622-23, 740 P.2d 879 (1987).

[14] Brief of Respondent at 10 (citing State v. Chenoweth, 160 Wn.2d 454, 477, 158 P.3d 595 (2007)).

conceded that this reliance was incorrect. So too is any reliance on the trial court's findings of fact and conclusions of law regarding the question of probable cause at the suppression hearing.[15] The proper standard of review of a probable cause determination is the one previously articulated.

Here, disregarding the evidence obtained from the unlawful October 11 trespass, there was sufficient evidence before the issuing judge to support the determination of probable cause for the second warrant.

First, there was testimony that Deputy Paz smelled marijuana from Olson Road, a proper vantage point, on at least two separate occasions. He stated:

> The first occasion was [October 7] and it was from the exact same spot that I could smell it fro[m] last night. That was at nighttime, and the wind was actually blowing in the same direction from north to south. And that is when [another deputy] was with me. And then on [October 11], again in the same location on Olson Road, we could smell it again . . . .[16]

He also provided additional details about this location on Olson Road:

> The milk parlor and the office are fairly close to Olson Road. And there is a row of fairly large trees separating the property and Olson Road. On the southwest portion of the property, there is basically a tree missing and I stood there on the county right of way, on the eastern side of the road . . . .[17]

Hovander admits this fact in his brief. He states: "Deputy Paz confirmed that he had detected the odor of growing marijuana multiple times from the same

---

[15] See State v. Perez, 92 Wn. App. 1, 4 n.3, 963 P.2d 881 (1998).

[16] Clerk's Papers at 95.

[17] Id. at 94.

vantage point—a break in the tree line along Olson Road to the south of the Milk Barn."

Second, Deputy Paz's testimony was based on more than his mere personal belief. The search warrant affidavits contained detailed information demonstrating that Deputy Paz had extensive training and experience with marijuana detection. Deputy Paz testified that he has been involved with "well over a hundred marijuana-growing investigations." He provided testimony about his specific ability to detect the odor of growing marijuana:

> [Prosecutor]: Can you also indicate the odor of growing marijuana? Is there a difference between growing marijuana versus the odor of burned marijuana?
>
> Paz: Yes, yes there is.
>
> [Prosecutor]: And you have a training experience to tell you the difference between those two things?
>
> Paz: Yes.
>
> [Prosecutor]: And can you tell us about your training experience with the difference between growing marijuana and burned marijuana?
>
> Paz: My initial experience comes from a test where they let you smell packaged marijuana, dried marijuana, and then also the new class on marijuana grows. And I have extensive field experience with the marijuana grows. Being able to recognize when it is an actual grow and when they are just drying marijuana or smoking marijuana.
>
> [Prosecutor]: You told me yesterday that you were involved in over 100 cases of growing marijuana.
>
> Paz: At least, at least.[18]

---

[18] Id.

The cases uniformly hold this is sufficient to support probable cause.

Third, there was testimony to support a reasonable inference that the milk parlor was the source of the odor. Deputy Paz described the layout of the property, stated he could see that the barns were empty and said that "it is obvious from the road that none of those buildings are being used to grow marijuana." He testified that the closest house is farther north on Olson Road, at least a half a mile north. And he stated that the wind was blowing from north to south.

Further, he testified that there were two infrared cameras watching the property. And he testified that the monthly power consumption, according to records, was "at least ten times above the average for the state of Washington."

In sum, viewing the affidavits in a commonsense manner, they set forth sufficient facts to convince a reasonable person of the probability that Hovander was engaged in criminal activity and that evidence of criminal activity could be found at the milk barn.

Hovander argues that Deputy Paz's third smell from Olson Road, which occurred on October 12, the day after the trespass, is tainted because the deputies had already definitively determined the source of the smell. But, as Hovander even states, the evidence of this third smell "duplicates evidence already in the officer's possession." Thus, Deputy Paz's first and second smells from Olson Road, on October 7 and on October 11, along with the other evidence presented, is sufficient to establish probable cause.

Hovander makes a number of additional arguments that the evidence was insufficient to support probable cause. None are persuasive.

First, Hovander argues that the trial court erred in considering testimony that was first presented at the suppression hearing and was not presented to the issuing judge. But the trial court's findings and conclusions are irrelevant to our review of probable cause.[19] An appellate court reviews the determination of probable cause de novo, based on the information that was before the issuing judge. And, as previously discussed, the record before the issuing judge contained sufficient evidence to conclude that probable cause existed in this case.

Second, Hovander argues that Deputy Paz provided insufficient evidence of his special expertise to support the conclusion that he could smell growing marijuana from 376 feet away. But in State v. Johnson, Division Three rejected a similar argument.[20]

In that case, Division Three considered whether evidence that federal DEA agents smelled marijuana "from the street in front of [Johnson's] house" was sufficient to support probable cause.[21] In concluding that it was, the court looked to the agents' experience and expertise.[22] There, Johnson argued that exact distances should be included in the affidavit, but the court stated that this is

---

[19] See Perez, 92 Wn. App. at 4 n.3.

[20] 79 Wn. App. 776, 782, 904 P.2d 1188 (1995).

[21] Id. at 779.

[22] Id. at 780.

10

"unsupported by case law."[23] The Johnson court reiterated that the magistrate need only draw the reasonable inference that the odor is connected to the defendant's residence. Hovander provides no authority holding the contrary.

Third, Hovander argues that "the search warrants contain 'no information from which one can draw a commonsense inference that [the officers] were able to determine the source of the smell from their location.'"[24] For this argument, he relies on the dissent in Johnson.[25] Such reliance is unpersuasive.

There, the dissent stated that had the federal agents been "inside the residence, in a doorway, near an air vent or close to the building when they detected the smell," then probable cause would exist.[26] But it stated: "The affidavit is silent with respect to [the agents'] distance from [Johnson's] house and [the agents'] ability to smell marijuana at that distance, as well as other possibly relevant factors such as landscaping, wind direction and the relative location of other residences on the street."[27] Accordingly, it disagreed with the majority that there was probable cause.[28]

---

[23] Id. at 782.

[24] Brief of Appellant at 23 (citing Johnson, 79 Wn. App. at 786).

[25] Id. at 22-23 (citing Johnson, 79 Wn. App. at 783 (Schultheis, J., dissenting)).

[26] Johnson, 79 Wn. App. at 785.

[27] Id.

[28] Id. at 783.

11

But, as previously discussed, the affidavits in this case contained information from which one could draw a reasonable inference that the milk barn was the source of the odor. Moreover, the factors set forth in the Johnson dissent is not the test. Thus, Hovander's reliance on the dissent in Johnson is not persuasive.

Finally, Hovander argues that evidence of the milk barn's consumption of electrical power was illegally obtained and that this information should be excised from the search warrant application. Specifically, he asserts that a subpoena or letter from the police directing a seizure of power records is not lawful under Article 1, Section 7 of the Washington State Constitution.

Hovander first argues that privately owned power records should be afforded the same protection as bank records and should require a judicial warrant or subpoena. For this argument, he relies on State v. Miles, where the supreme court held that bank records are within a person's private affairs and thus require authority of law to justify an intrusion.[29] Power records were not at issue. But reliance on Miles is misplaced. In Miles, the supreme court expressly determined that individuals have a protected privacy interest in bank records.[30]

In contrast, in In re Maxfield, a supreme court case, a majority of justices held there is *no* protected privacy interest in power records.[31] Although the court

---

[29] Brief of Appellant at 46-47 (citing State v. Miles, 160 Wn.2d 236, 247, 156 P.3d 864 (2007)).

[30] Miles, 160 Wn.2d at 244-47.

[31] 133 Wn.2d 332, 945 P.2d 196 (1997).

was split on the issue, five justices rejected Hovander's argument.[32] Accordingly, Hovander's general assertion that these power records should be afforded the same protection as bank records is not persuasive.

Hovander also relies on RCW 42.56.330 for the proposition that "[p]ersonally identifying information may be released to law enforcement agencies if the request is accompanied by a court order."[33] But this statute expressly relates to public utilities.[34] Puget Sound Energy, the utility providing power here, is neither a public utility nor a municipally owned electrical utility. Accordingly, the requirements of this statute have no relevance to this case.

Hovander next argues that power records have little weight for probable cause purposes.[35] But the issuing judge heard testimony that the property's consumption was at least ten times above the average Washington power bill. He also heard testimony from Deputy Paz that the only electrical usage he could observe was some low power lights at night. Further, "[w]hile an increase in electrical consumption by itself does not constitute probable cause to issue a search warrant, the increase, when combined with the other suspicious facts, is a

---

[32] Id. at 344-49 (Madsen, J. concurring).

[33] Brief of Appellant at 46 (quoting RCW 42.56.330).

[34] See RCW 42.56.330.

[35] Brief of Appellant at 47 (citing State v. McPherson, 40 Wn. App. 298, 698 P.2d 563 (1985)).

proper factor in determining whether probable cause exists."[36] Accordingly, this evidence had some probative value.

## Franks Hearing

Hovander argues that the trial court erred when it concluded that Deputy Paz neither recklessly nor intentionally failed to disclose information to the search warrant magistrate. We disagree.

A defendant is entitled to a Franks hearing to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant.[37]

A court begins with the presumption that the affidavit supporting a search warrant is valid.[38] Then, "[a]s a threshold matter, the defendant must first make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'"[39]

Reckless disregard for the truth occurs when the affiant "'in fact entertained serious doubts as to the truth' of facts or statements in the affidavit."[40] Such "serious doubts" are shown by "'(1) actual deliberation on the

___

[36] State v. Cole, 128 Wn.2d 262, 291, 906 P.2d 925 (1995).

[37] 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[38] Franks, 438 U.S. at 171.

[39] State v. Atchley, 142 Wn. App. 147, 157, 173 P.3d 323 (2007) (quoting Franks, 438 U.S. at 155-56).

[40] State v. Clark, 143 Wn.2d 731, 751, 24 P.3d 1006 (2001) (quoting State v. O'Connor, 39 Wn. App. 113, 117, 692 P.2d 208 (1984)).

part of the affiant, or (2) the existence of obvious reasons to doubt the veracity of the informant or the accuracy of his reports.'"[41] Assertions of mere negligence or innocent mistake are insufficient.[42]

The defendant's allegations must be accompanied by an offer of proof, including "relevant statements of witnesses and reasons supporting the claims."[43]

The same test is used for material omissions of fact.[44] "In examining whether an omission rises to the level of a misrepresentation, the proper inquiry is not whether the information tended to negate probable cause or was potentially relevant, but, [rather, the court must find] the challenged information was necessary to the finding of probable cause."[45]

If the defendant succeeds in showing a deliberate or reckless omission, then the omitted material is considered part of the affidavit.[46] "If the affidavit with the matter deleted or inserted, as appropriate, remains sufficient to support a finding of probable cause, the suppression motion fails and no hearing is required."[47]

---

[41] Id. (quoting O'Connor, 39 Wn. App. at 117).

[42] Atchley, 142 Wn. App. at 157.

[43] Id.

[44] State v. Garrison, 118 Wn.2d 870, 872, 827 P.2d 1388 (1992).

[45] Atchley, 142 Wn. App. at 158.

[46] Id.

[47] Garrison, 118 Wn.2d at 873.

A trial court's conclusion that the affiant did not recklessly omit material facts in obtaining a search warrant should be upheld where such determination is not clearly erroneous.[48] Great deference is given to the trial court's factual findings.[49]

Here, Hovander contends that Deputy Paz acted recklessly when he: (1) failed to disclose that he believed the milk barn had been the site of a medical marijuana grow operation in the past; (2) testified that the closest building was a mile farther north when, in fact, Hovander's house was located 197 feet away; and (3) failed to disclose that he was 376 feet away from the milk barn when he detected an odor of growing marijuana.

Hovander had the burden of making a substantial preliminary showing that Deputy Paz recklessly failed to disclose information to the issuing magistrate. In his offer of proof, Hovander pointed out inconsistencies between Deputy Paz's search warrant testimony and report. He included a declaration from Hovander, which asserted that: Deputy Paz knew of a prior investigation involving a medical grow operation at Hovander's property, that the milk barn is 376 feet away from the gap in the tree line, and that Hovander's residence is 197 feet away from the gap in the tree line. He also included an aerial photograph showing these distances and other buildings.

The superior court made the following conclusion:

---

[48] See Chenoweth, 160 Wn.2d at 481.

[49] Atchley, 142 Wn. App. at 154.

It was neither a reckless nor intentional omission of material fact to not provide the issuing magistrate with information regarding the year earlier medical marijuana investigation and the showing has not been made requiring a hearing under Franks v. Delaware. The medical marijuana information would, at best, have provided a potential defense or mitigating circumstance for a charging decision. Deputy Paz was under no duty to advise the magistrate that in the prior year he believed that there was a marijuana growing operation in the milking parlor. Two reasons support this conclusion. Firstly, this information is inaccurate. Secondly, on the occasions when Deputy Paz visited 5268 Olson Road, he would not have detected the odor of growing marijuana emanating from the residence at 5208 Olson Road due to the wind direction at the location where he was conducting his investigation.[50]

As the trial court correctly noted, Deputy Paz's belief that the farm was the site of a prior legal grow operation would not be material to the determination of probable cause. At best, it would have provided a potential defense. Accordingly, this conclusion was not clearly erroneous.

Additionally, none of the other alleged misstatements and omissions warranted a Franks hearing.

First, although the record shows that there were inconsistencies between Deputy Paz's report and his testimony, there is no evidence that he acted intentionally. Thus, the question is whether he acted with a reckless disregard for the truth.

Deputy Paz testified that the milk barns were "fairly close" to Olson Road. Hovander's declaration shows that the distance from the tree line to the milk barn is 376 feet. This statement does not show reckless disregard for the truth. Further, even if it did, this fact is not material because it is not "necessary" to the

---

[50] Clerk's Papers at 141.

determination of probable cause.[51] The issuing judge understood Deputy Paz's location to be sufficiently close to detect the smell of marijuana and the precise distance is not critical to establish probable cause.

The next question is whether Deputy Paz acted recklessly when he testified that the closest house was "farther north on Olson Road . . . at least a half a mile, maybe three-quarters of a mile at the north." The aerial photograph and declaration submitted by Hovander showed that Hovander's house was 197 feet away to the southeast, that a neighbor's house was 360 feet to the southwest, and that a trailer was 254 feet to the east. Given this photograph, there was reason to doubt the accuracy of Deputy Paz's statement to the extent of his estimate of distance.

But even if Deputy Paz recklessly misstated the location of the closest house and omitted the fact that Hovander's house was 197 feet away, neither the misstatement nor the omission was material. Although this information could undercut probable cause, it is not "necessary" to the determination of probable cause. Even if this information was included, the affidavit still supports a reasonable inference that the milk barn was the source of the odor, given that the milk barn was the closet building to the north, the fact that the wind was blowing from north to south, the infrared cameras on the property, and the power consumption records. Accordingly, Hovander's showing simply falls short of what Franks requires.

---

[51] See Atchley, 142 Wn. App. at 158.

*2011 Amendments*

Hovander argues that the search warrant was defective because law enforcement failed to establish that the suspected grow operation was not a legal, medical grow operation. He argues that the 2011 amendments to RCW 69.51A.040 decriminalized medical marijuana, and law enforcement now bears the additional burden of showing that the grow operation is not legal.

Although Hovander made a related argument below, Hovander concedes that this precise argument was not presented to the trial court. Thus, he did not preserve this issue for review.

Hovander cites to In re Nichols for the proposition that this issue may properly be considered on appeal.[52] But he fails to make any argument beyond that citation to show why we should consider this new argument. Thus, we decline to consider it.[53]

*Independent Source Doctrine*

Hovander next argues that the search of the milk barn was unlawful because "the trespass prompted the decision to secure a second warrant." We disagree.

Evidence that is seized during an illegal search is subject to suppression under the exclusionary rule.[54] The independent source doctrine is a "well-

---

[52] Brief of Appellant at 50 (citing In re Nichols, 171 Wn.2d 370, 256 P.3d 1131 (2011)).

[53] RAP 2.5(a)(3).

[54] State v. Gaines, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005).

established exception to the exclusionary rule."[55] The United States Supreme Court's decision in Murray v. United States[56] is the "'controlling authority' defining the contours of the independent source exception."[57] In Murray, the court held that the Fourth Amendment does not require the suppression of evidence discovered during police officers' illegal entry if that evidence is also discovered during a later search pursuant to a valid search warrant that is independent of the illegal entry.[58] It stated that:

> The ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.[59]

Accordingly, in Washington, courts have interpreted the requirements in Murray to have two prongs, both of which must be satisfied. "Under the independent source exception, an unlawful search does not invalidate a subsequent search if (1) the issuance of the search warrant is based on untainted, independently obtained information and (2) the State's decision to seek the warrant is not motivated by the previous unlawful search and seizure."[60]

---

[55] State v. Miles, 159 Wn. App. 282, 291, 244 P.3d 1030 (2011).

[56] 487 U.S. 533, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988).

[57] Miles, 159 Wn. App. at 292 (quoting Gaines, 154 Wn.2d at 721).

[58] Murray, 487 U.S. at 542.

[59] Id.

[60] Miles, 159 Wn. App. at 284.

Washington courts have adopted the approach taken by a majority of courts, that the first prong is satisfied so long as the remaining information in the search warrant affidavit establishes probable cause.[61]

The second prong, referred to as the "motivation prong," is a question of fact that must be determined by the trial court.[62]

Findings of fact are reviewed for substantial evidence.[63] Substantial evidence is "'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'"[64] Conclusions of law are reviewed de novo.[65]

Here, both "prongs" of the independent source doctrine were met, and the search of the milk barn was lawful.

First, as previously discussed, there was sufficient information in the affidavits to support the determination of probable cause.

Second, the superior court concluded that "[t]he requirements of the independent source doctrine have been met and the investigation would have continued despite some actions being taken in violation of Article I, Sec. 7 on the

---

[61] See State v. Maxwell, 114 Wn.2d 761, 769, 791 P.2d 223 (1990).

[62] Miles, 159 Wn. App. at 298.

[63] State v. Vickers, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

[64] Id. (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).

[65] State v. Carter, 151 Wn.2d 118, 125, 85 P.3d 887 (2004).

October 11, 2011 visit to the property."[66] To support its conclusion, the court expressly made Finding of Fact 6 related to the State's motivation. It stated:

> The information flowing from the power records, surveillance cameras and the detection of the odor of growing marijuana on multiple occasions from multiple locations by multiple officers would have influenced Deputy Paz to continue his investigation and seek search warrants, even if he had not crossed the property line and fences on October 11, 2011.[67]

Substantial evidence supports this finding. At the suppression hearing, Deputy Paz was asked whether he would have continued to investigate the odor that he had smelled on October 7, given the power records that he received thereafter. Deputy Paz indicated that he would have. An appellate court does not review credibility determinations on appeal.[68]

Accordingly, based on the testimony at the suppression hearing, the court properly found that Deputy Paz would have continued his investigation.

Hovander argues that the State fails to satisfy the motivation test because the illegal activity was the decision to seek both the first and second warrant and because the motivation test "requires a court finding that the deputies would have secured a search warrant if Deputy Paz had not trespassed." Hovander also argues that the "more probable explanation is that [the deputies] would *not* have sought a search warrant had Deputy Paz not illegally trespassed." But these arguments ignore Finding of Fact 6, as previously discussed, where the trial court

---

[66] Clerk's Papers at 141.

[67] Id. at 140.

[68] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

22

did make such a finding and disagreed with Hovander's argument. Thus, these arguments are not persuasive.

Hovander cites to Murray and asserts that there is a "disconnect' with the command in Murray.[69] He then argues that Deputy Paz returned to the "same magistrate and presented the additional evidence regarding an independent smell of the odor of marijuana merged with the evidence of the first search warrant."[70] Hovander's argument is not fully briefed, but it appears that he is pointing to the clause in Murray that suggests that the independent source doctrine is not met "if information obtained during that entry was presented to the Magistrate *and affected his decision to issue the warrant.*"[71]

But even if this is what Hovander argues, the majority of courts have concluded that this part of Murray is dictum and is "inconsistent with the overall tenor of the opinion and with prior case law."[72] Washington courts have agreed with the majority of other courts and have concluded that a warrant is valid if the lawfully obtained evidence in the application supports probable cause.[73]

Finally, Hovander asserts that the attenuation doctrine and the independent source doctrine are prohibited under Article 1, Section 7 of the

---

[69] Brief of Appellant at 40 (citing Murray, 487 U.S. at 542).

[70] Id.

[71] Murray, 487 U.S. at 542 (emphasis added).

[72] State v. Spring, 128 Wn. App. 398, 404-05, 115 P.3d 1052 (2005) (quoting State v. Chaney, 318 N.J. Super. 217, 224, 723 A.2d 132 (1999)).

[73] Id. at 405.

Washington State Constitution "in the same manner as was the inevitable discovery rule, which was abrogated in State v. Winterstein."[74] He states that the issue "is currently before the state supreme court in State v. Smith."[75] And he "notes" that in the event the supreme court abrogates the attenuation doctrine and the independent source doctrine, then the search warrants in this case will "collapse."

But the supreme court decided State v. Smith in June 2013, and it did not abrogate these doctrines.[76] Because Hovander does not make any further argument to support his assertion that these doctrines violate the constitution, we decline to further address his claims.[77]

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Spearman, C.J._

---

[74] Brief of Appellant at 16 (citing State v. Winterstein, 167 Wn.2d 620, 220 P.3d 1226 (2009)).

[75] Id. (citing State v. Smith, 173 Wn.2d 1034, 277 P.3d 669 (2012)).

[76] 177 Wn.2d 533, 303 P.3d 1047 (2013).

[77] See State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (declining review of constitutional issues unsupported by reasoned argument).